**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Aaron Dalton,<br><br>Plaintiff,<br><br>v.<br><br>Simonson Station Stores, Inc., and Bemidji Management Company L.L.C.,<br><br>Defendants. | Case No. 0:17-cv-04427 (SRN/LIB)<br><br>**MEMORANDUM OPINION AND ORDER** |

Padraigin Browne, Browne Law LLC, 8530 Eagle Point Boulevard, Suite 100, Lake Elmo, Minnesota 55042, for Plaintiff.

Edward Peter Sheu, Best & Flanagan LLP, Sixty South Sixth Street, Suite 2700, Minneapolis, Minnesota 55402, for Defendants.

---

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 16] ("Motion to Dismiss"). Defendants also ask the Court to strike improper supplemental pleading by Plaintiff. For the reasons stated below, the Court will strike those allegations in Plaintiff's Amended Complaint [Doc. No. 13] that describe events occurring after the initial Complaint [Doc. No. 1] was filed and will deny Defendants' Motion to Dismiss.

## I. BACKGROUND

As Defendants' Motion to Dismiss involves a factual challenge to jurisdiction, the Court considers some evidence outside the pleadings. Unless contradicted by the limited

record, the Court takes Plaintiff's properly-plead allegations as true. *See Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014).

Plaintiff Aaron Dalton ("Dalton") is a Minnesota resident living in Burnsville, Minnesota. (Am. Compl., ¶ 9.) Dalton suffers from cerebral palsy and uses a wheelchair for mobility, as well as a van with a wheelchair lift. (*Id.* ¶¶ 10, 13.) On June 24, 2017, Dalton attempted to visit Simonson Station, a service station and convenience store in Alexandria, Minnesota. (*Id.* ¶¶ 1, 14.) Defendant Simonson Station Stores, Inc. is the operator and lessee of the station, and Defendant Bemidji Management Company L.L.C. is the owner and lessor of the station. (*Id.* ¶¶ 11-12.)

As Dalton plead in his original Complaint, on this June 24 visit Dalton observed that the parking lot contained 30 parking spaces and only 1 space reserved for disability-accessible parking. (Complaint, ¶¶ 13-14.) The reserved space had no access aisle adjacent to it, and was not identified with a posted sign. (*Id.* ¶¶ 15-16.) Additionally, Dalton noted that "[t]he exterior side to the customer entrance to 'Simonson Station' appeared to be sloped and lacked adequate maneuvering clearance." (*Id.* ¶ 19.) As a result of these barriers, Dalton was deterred from parking at Simonson Station and patronizing the service station or convenience store. (*Id.* ¶ 21.)

Dalton filed his Complaint in this Court on September 27, 2017, seeking injunctive relief under Title III of the Americans with Disabilities Act ("ADA"). (*Id.*) Less than a month later, Defendants filed a Motion to Dismiss Plaintiff's Complaint [Doc. No. 7], arguing that they had remedied all the alleged ADA violations and that the Complaint was moot. Defendants submitted documentation showing that, since the filing of the Complaint,

they had added an additional reserved parking space, an access aisle adjacent to each reserved space, and signage identifying reserved and van-accessible parking. (*See* Decl. of Arch Simonson [Doc. No. 10], ¶ 5; *id.*, Ex. 2 [Doc. No. 10-1].) Defendants submitted a picture of the entrance closest to the reserved parking spaces and submitted a declaration that is was "flat, on a level path from accessible parking." (*Id.* ¶ 6; *id*., Ex. 3.)

Dalton did not respond to Defendants' first Motion to Dismiss, but instead filed an Amended Complaint. The Amended Complaint raises additional alleged violations, included that the reserved parking space is too steeply sloped, that the route from the reserved space to the entrance extends into the vehicular traffic lane, and that the dining surfaces for the in-store deli are not at a proper height. (Am. Compl., ¶¶ 18, 22-23.) Dalton also amended his allegations to specify that it was the customer entrance closest to the reserved parking that is "sloped and lacked adequate level maneuvering clearance." (*Id.* ¶ 21.)

Dalton's Amended Complaint also alleges that Defendants' remediation efforts were insufficient. Dalton alleges that, though Defendants installed an additional reserved parking space and an access aisle for van-accessible parking, they are too steeply sloped. (*Id.* ¶ 27.) Further, Dalton alleges that one of the newly installed signs is not at least 60 inches off the ground, as required by the ADA accessibility guidelines. (*Id.* ¶ 26.)

Defendants again filed a Motion to Dismiss. Defendants assert that this Court does not have jurisdiction over Dalton's claim because it is moot and because Dalton does not have standing. (Defs.' Mem. of Law to Supp. their Mot. to Dismiss Pl.'s Am. Compl. [Doc. No. 21] ("Defs.' Mem."), at 10-20.) Defendants further argue that Dalton has failed to

plead factual allegations that plausibly state a claim for relief, and that Dalton's improper supplemental pleading should be stricken. (*Id.* at 8-10, 20-25.)

## II. DISCUSSION

### A. The Americans with Disabilities Act

The ADA prohibits property owners or lessees from discriminating against persons with disabilities by preventing them from fully and equally accessing and enjoying public accommodations. 42 U.S.C. § 12182(a). Structures built or modified after the ADA effective date of January 26, 1993 must comply with accessibility standards in the ADA regulations except where "structurally impracticable." *Id.* § 12183(a)(1). For structures built before 1993, the ADA creates an obligation to "remove architectural barriers . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).

Dalton's pleadings make reference to the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). The ADAAG were promulgated by the United States Attorney General, in coordination with the United States Architectural and Barriers Compliance Board, to describe minimum requirements for accessibility in new constructions and modifications. ADAAG 101.1; 42 U.S.C. § 12186(b).

### B. Request to Strike Supplemental Pleading

At the outset, Defendants argue that Dalton's Amended Complaint is an improper supplemental pleading. (Defs.' Mem., at 8-10.) Federal Rule of Civil Procedure 15(a)(1)(B) permits a plaintiff to amend his complaint once as a matter of course "21 days after service of a responsive pleading or 21 days after service of a motion under

Rule 12(b), (e), or (f), whichever is earlier." Supplemental pleading, however, may only be submitted "[o]n motion and reasonable notice," and "on just terms" according to the Court's discretion. Fed. R. Civ. P. 15(d). The Rules describe supplemental pleading as pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.*

Dalton concedes that his Amended Complaint includes supplemental pleading, and that Dalton failed to move the Court to permit him to supplement his Complaint. (Pl.'s Opp'n to Defs.' Mot. to Dismiss [Doc. No. 23], at 25.) But Dalton maintains that the overwhelming majority of allegations in the Amended Complaint are not supplemental and should not be stricken. (*Id.*)

The Court agrees that striking Dalton's entire Amended Complaint would be excessive here. Defendants point to *U.S. ex rel Kinney v. Stoltz*, No. 01-cv-1287, 2002 WL 523869 (D. Minn. Apr. 5, 2002), in which the court struck the plaintiff's "First Amended Complaint" because the plaintiff failed to obtain leave to supplement. But in *Kinney*, the only difference between the original complaint and the "First Amended Complaint" was the addition of a new party based upon events occurring after the complaint was filed. *Id.* at *3. Here, Dalton's Amended Complaint contains both amendments to the initial Complaint and supplemental pleading. (Am. Compl.) To strike the entire pleading would risk depriving Dalton of his right to a permissive amendment under Fed. R. Civ. P. 15(a)(1)(B). Therefore, the Court will strike only those allegations that refer to events occurring after the Complaint was filed on September 27, 2017.

**C. Motion to Dismiss**

**1. Jurisdiction under Fed. R. Civ. P. 12(b)(1)**

An Article III court's jurisdiction is limited to actual cases and controversies. U.S. Const. Art. III, § 2. A defendant may challenge jurisdiction under the cases or controversies requirement by bringing a motion under Federal Rule of Civil Procedure 12(b)(1). *Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018); *Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018).

A court deciding a motion under Rule 12(b)(1) must distinguish between a facial attack and a factual attack. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the court looks to the pleadings to consider whether the plaintiff has alleged a sufficient basis for jurisdiction and accepts all factual allegations as true. *See id.* Conversely, in a factual attack, the court considers "'matters outside the pleadings, such as testimony and affidavits.'" *Id.* at 914-15 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

**a. Mootness**

Defendants make a factual attack on jurisdiction on mootness grounds, arguing that the claims in Dalton's original complaint are moot because Defendants have remedied all of the barriers to accessibility that Dalton raised. (Defs.' Mem., at 12-17.) "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). If circumstances

change such that "a federal court can no longer grant effective relief, the case is moot." *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam). But "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," so when a defendant argues mootness by voluntary conduct, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted). Here, Defendants bear a "heavy burden" to show that Dalton's claims are moot. *Id.* (citation omitted).

Defendants argue that they mooted the allegations in the Complaint when they altered the parking lot at Simonson Station to create two ADA compliant accessible parking spaces, an access aisle, and signage. (Defs.' Mem., at 15.) Defendants further argue that the only other relevant allegation in the Complaint, that the customer entrance was improperly sloped and lacked maneuvering clearance, did not truly allege a barrier because Dalton's Complaint referred to the customer entrance farthest away from accessible parking, and Defendants maintain that the customer entrance nearest to the reserved parking has always been accessible. (*Id.* at 16.)

Dalton argues that he must take discovery in order to "adequately assess and, if appropriate, challenge [Defendants'] measurements" of the alterations. (Pl.'s Mem., at 22.) Dalton further argues that Defendants' evidence is silent with respect to at least two of the barriers alleged in the Amended Complaint, so Dalton's claim cannot be found to be moot. (*Id.* at 23.)

Dalton's initial Complaint alleged discrimination based on Simonson Station's lack of a second reserved parking space, access aisle, signage, and an accessible customer entrance. Defendants have submitted evidence that three of these four alleged barriers have been remedied. (*See* Decl. of Arch Simonson, ¶ 5; *id.*, Ex. 2; Third Decl. of Arch Simonson [Doc. No. 26], Ex. 2 [Doc. No. 27].) But Dalton's allegation that the customer entrance is inaccessible, as clarified in the Amended Complaint, remains. (Compl., ¶¶ 19, 26; Am. Compl., ¶¶ 21, 33.) So do Dalton's allegations in the Amended Complaint that the reserved space is improperly sloped, that the route to the customer entrance extends into the vehicular lane, and that the in-store deli lacks accessible dining surfaces. (Am. Compl., ¶¶ 18, 22-23.) Though Defendants take issue with these alleged barriers, their arguments go to the merits of Dalton's ADA claims, and it would be inappropriate to rule upon them in a mootness analysis. (Defs.' Mem., at 16-25.) And as the Court determines below, most of these remaining claims survive Defendants' standing and 12(b)(6) challenges. Because claims remain upon which the Court could grant relief, both from Dalton's initial Complaint and his Amended Complaint, Dalton's case cannot be dismissed for mootness.

**b. Standing**

Defendants make a facial attack on jurisdiction on standing grounds. To establish Article III standing, the plaintiff must show—as an "irreducible constitutional minimum"—the existence of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, there must be an "injury in fact." *Id.* Second, "there must be a causal connection between the injury and the conduct complained of," such that the

injury is "fairly trace[able] to the challenged action of the defendant." *Id.* Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotations and citation omitted).

"[S]tanding is to be determined as of the commencement of the suit." *Id.* at 570 n.5. The burden of establishing the elements of standing is on the party invoking federal jurisdiction. *See Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 82 (8th Cir. 1996). Where, as here, the defendant challenges the existence of jurisdiction on the face of the pleadings, and not through extrinsic evidence, the reviewing court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2012).

Defendants make two standing arguments. First, Defendants argue that an ADA plaintiff can only be injured by architectural barriers that he actually encounters, and that Dalton was not injured by the remaining alleged barriers in his Amended Complaint (those not rendered moot by Defendants' remedial efforts), because he did not encounter them and thus they did not inhibit his ability to patronize Simonson Station. (Defs.' Mem., at 17-20.) Dalton does not allege that he returned to the site after June 24, 2017 or after Defendants' remedial alterations, so Defendants argue that Dalton could not have encountered the alleged barriers added in the Amended Complaint (*Id.*)

Dalton argues that he need not have encountered every alleged barrier to be entitled to injunctive relief for removal of those barriers. (Pl.'s Mem., at 15.) Relying on the Eighth Circuit's decision in *Steger v. Franco*, 228 F.3d 889 (8th Cir. 2000), Dalton argues that, as long as he encountered "at least one barrier which interfered with his 'full

and equal' enjoyment of the facility on account of his particular disability," he has standing to challenge other barriers at Simonson Station. (*Id.*)

In *Steger*, the court stated that the blind plaintiff Burch, who had been unable to locate the bathroom in an office and retail space because it was not labelled with braille signage, could seek relief for barriers that he had not personally encountered but that "could injure blind persons." 228 F.3d at 893-94; *id.* at 894 ("Burch need not encounter all of these barriers to obtain effective relief."). The importance of this statement in *Steger* is unclear, however, because it was made in the context of the redressability prong of the standing analysis, and because the Eighth Circuit recently limited *Steger* in *Davis v. Anthony, Inc.*, 886 F.3d 674 (8th Cir. 2018).

In *Davis*, the plaintiff alleged that parking lot barriers had prevented her from visiting the defendant's steakhouse. *Id.* at 676. The defendant removed the parking lot barriers and moved to dismiss for mootness. *Id.* Davis argued that the court should not rule on mootness until she could conduct discovery to see "what, if any, other barriers affecting her disability existed at [the steakhouse] at the time [she] brought her claim." *Id.* at 677-78. She relied upon *Steger* to argue that her injury from the barrier in the parking lot gave her standing to sue for ADA violations inside the steakhouse. *Id.* The court disagreed, and held that "[t]he *Steger* case expands standing only when the plaintiff encounters a violation in a building." *Id.* at 678. The court concluded that Davis "has standing to sue for parking-space violations she encountered." *Id.*

The most apparent effect of *Davis* is that Dalton does not have standing to sue for the lack of accessible dining surfaces inside Simonson Station. *See id.* ("Davis cannot

use the violation encountered in the parking space to expand her standing to sue for unencountered violations inside the steakhouse that never injured her."). But the Court is not sure that *Davis* goes so far, as Defendants argue, as to hold that an ADA plaintiff may not sue for architectural barriers outside a building the plaintiff never encountered. (*See* Defs.' Notice of Supplemental Authority [Doc. No. 45].)

But even if *Davis* can be interpreted to require Dalton to have encountered every alleged barrier in the parking lot, Dalton still has standing. Excluding the alleged violations that Defendants have remedied, the ones stricken as improper supplemental pleading, and the allegation of a barrier inside the building, Dalton still pleads that the reserved accessible parking space was too steeply sloped, that the exterior side of the closest customer entrance was not accessible, and that the route from reserved parking to that entrance unsafely extended into a vehicular traffic lane. (Am. Compl. ¶¶ 18, 21-22.) These alleged violations are in the same space and concern the same accessibility challenges as the barriers alleged in the initial Complaint: safely disembarking from a van in a wheelchair and moving across the parking lot to enter the store. To conclude that Dalton did not "encounter" these barriers when he visited Simonson Station solely because they were not alleged in the initial Complaint would, again, undermine Dalton's right to amend his complaint once as a matter of course. *See* Fed. R. Civ. P. 15(a). Dalton alleges that he encountered barriers in his Amended Complaint, and thus pleads injury from those barriers.

Defendants also argue, in their reply brief, that Dalton has not sufficiently plead a threat of future harm requiring injunctive relief. (Defs.' Reply Br. for Their Mot. to

Dismiss Pl.'s Am. Compl. [Doc. No. 25] ("Defs.' Reply"), at 3-4.) Dalton seeks injunctive relief under Title III of the ADA. (Am. Compl.) To allege an "injury in fact" that confers standing to seek injunctive relief, a plaintiff must face a threat of ongoing or future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). For an ADA claim, a party's intention to return to a facility that allegedly contains architectural barriers gives rise to a cognizable threat of future harm. *See Sawczyn*, 8 F. Supp.3d at 1111. Defendants argue that Dalton does not plausibly allege that he intends to return and attempt to patronize Simonson Station, because it is 150 miles from his home, and "Dalton does not allege he ever tried visiting the Simonson Station Store before June 24, 2017 or why he would return (except to see if the alleged architectural barriers have been removed)." (Defs.' Reply, at 4.)

Setting aside the fact that Defendants did not raise this argument until their reply brief,[1] the Court finds that Dalton has sufficiently plead that he intends to return to Simonson Station. The requirement at the pleading stage is not demanding. *See Sawczyn*, 8 F. Supp. 3d at 1112 (stating that the plaintiff need only show that non-accessible ATMs were "*near enough* and *convenient enough* that he might reasonably be expected to visit them"); *Smith v. Bradley Pizza, Inc.*, No. 17-cv-2032, 2018 WL 2190843, at *3 (D. Minn. May 14, 2018) ("At this early stage in the litigation, a general allegation of intent to return can meet the requirement for the threat of future harm, even when a plaintiff pleads no facts indicating regular or frequent patronage."). Dalton

[1] Claims not raised in an opening brief are ordinarily deemed waived. *See, e.g.*, *Bahl v. Cty. of Ramsey*, 597 F. Supp. 2d 981, 983 n.4 (D. Minn. 2009) (citing *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008)).

alleges that he "frequently travels throughout Minnesota, including Alexandria," and that he "plans to return and patronize 'Simonson Station' when he learns that the premises have been made fully accessible to persons who use wheelchairs for mobility." (Am. Compl. ¶¶ 29-30; *see also id.* ¶ 47 ("Plaintiff plans to visit 'Simonson Station' again in the near future.").) These allegations are sufficient, at this stage of litigation, to show the risk of future injury necessary for injunctive relief. Thus the Court will deny Defendants' Motion to Dismiss for lack of jurisdiction under Rule 12(b)(1).

**2. Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)**

Finally, Defendants argue that Dalton has failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mem., at 20-25.) Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint need not contain "detailed factual allegations," it must plead facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quotations and citation omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* The Court assesses plausibility by drawing "on its judicial experience and common sense." *Id.* at 679.

Defendants argue that Dalton has not met the Rule 8(a) pleading standard because (1) his allegations about the slope of the reserved parking space are vague and refer only to the maximum permitted slope pursuant to regulation rather than the actual slope of the parking space, (2) his allegations about the inaccessible customer entrance are vague and do not put forth any form of remedy, and (3) his allegations that Simonson Station was constructed after the ADA effective date or that removal of the barriers is readily achievable are boilerplate and insufficient to state a claim. (Defs.' Mem., at 20-25; Defs.' Reply, at 9-10.) The Court disagrees, and holds that Dalton has plead sufficient factual allegations to raise a claim of relief that is plausible on its face.

Dalton alleges that Simonson Station's reserved parking space "has slopes steeper than 1:48 in violation of ADAAG 502.4." (Am. Compl. ¶ 33.d.) Dalton need not provide the precise slope of the parking space in order to state a plausible claim that it is too steep under relevant regulations; if it exceeds 1:48, then the regulations say that it is too steep. Dalton also specifically alleges that the nearest customer entrance lacks adequate maneuvering clearance as required by ADAAG 206.2.1, 402.2.4., and 404.2.4.4. (*Id.* ¶ 33.h.) Reference to the ADAAG requirements provides Defendants with some notice of the remedial action they can take to make the entrance accessible. Finally, Dalton need not allege facts to show that remedying the barriers is readily achievable. That the removal of a barrier is not readily achievable is an affirmative defense that need not be plead to state a claim for relief,. *See Bradley Pizza*, 2018 WL

2190843, at *5; *Wong v. Muddy Pig*, No. 14-cv-3334, 2015 WL 225231, at *3 (D. Minn. Jan. 16, 2015) (citing *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1002 (10th Cir. 2001)). Thus, the Court will deny Defendants' Motion to Dismiss for failure to state a claim.

## III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 16] is **DENIED**;

2. Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. No. 7] is **DENIED AS MOOT**;

3. Paragraphs 25-27 and subparagraphs f-g of paragraph 33 are **STRICKEN** from Plaintiff's Amended Complaint [Doc. No. 13].

Dated: May 22, 2018

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge