# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Aaron Dalton,<br><br>        Plaintiff,<br><br>v.<br><br>Simonson Station Stores, Inc., and<br>Bemidji Management Company L.L.C.,<br><br>        Defendants. | Case No. 0:17-cv-04427 (SRN/LIB)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Padraigin Browne, Browne Law LLC, 8530 Eagle Point Boulevard, Suite 100, Lake Elmo, Minnesota 55042, for Plaintiff.

Edward Peter Sheu and Brian J. Linnerooth, Best & Flanagan LLP, Sixty South Sixth Street, Suite 2700, Minneapolis, Minnesota 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

Before the Court are the Motion to Amend Judgment [Doc. No. 127] filed by Plaintiff Aaron Dalton, the Motion for Attorneys' Fees and Non-Taxable Expenses [Doc. No. 121] filed by Defendants Simonson Station Stores, Inc., and Bemidji Management Company L.L.C. (hereafter "Simonson Station"), and Plaintiff's Amended Objection [Doc. No. 145] to Defendants' Bill of Costs [Doc. No. 134]. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part, Defendants' motion is denied, Plaintiff's Amended Objection is sustained, and Defendants' Bill of Costs is denied.

## I.    BACKGROUND

In June 2017, Dalton, who has cerebral palsy and uses a wheelchair and van with a wheelchair lift, visited the Simonson Station, a service station and convenience store located in Alexandria, Minnesota.  (*See* Sheu Decl. [Doc. No. 88], Ex. 1 (Pl.'s Interrog. Response Nos. 3–4); *id.*, Ex. 3 (Pl.'s Interrog. Response No. 17); Second Am. Compl. [Doc. No. 80] ¶¶ 13, 14, 12.)  At that time, the station's designated disability-accessible parking was located on the south side of the building, and the designated accessible entrance was on the east side.  (*See* Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 6, Ex. 2 at 4.)  On Dalton's visit, he observed several violations of the ADA and the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), related to proper signage, accessible parking spaces, parking lot access aisles, an accessible entrance, excessive slopes, and a safe route of transfer.  (*See id.*, Ex. 1 (Pl.'s Interrog. Response No. 6); *see also* Second Am. Compl. ¶¶ 14–24.)   Based on those conditions, Dalton did not feel comfortable exiting his vehicle, and he left the Simonson Station.  (Dalton Decl. [Doc. No. 95] ¶ 11.)

In September 2017, Dalton filed this disability discrimination lawsuit, asserting violations of the ADA and ADAAG, for which he seeks injunctive relief.  (*See generally,* Compl. [Doc. No. 1].)  In February 2018, while Defendants' Second Motion to Dismiss was pending, the Court directed the parties to meet and confer at the station to determine whether any of Defendants' changes had resolved Plaintiff's concerns.  (*See* Feb. 18, 2018 Order [Doc. No. 35] at 1.)  On February 21, 2018, Dalton made his second and final visit to the Simonson Station.  (Dalton Decl. ¶ 14.)  He contends that at that time, the driver of his van could not pull all the way into an accessible-marked spot.  (*Id.* ¶ 11.)  Also, Dalton contends that he was

forced to take his wheelchair through a traffic lane in order to reach the door of the store, and required a stranger's help to maneuver onto the ramp and into the store. (*Id.* ¶¶ 15–17.) In his declaration, Dalton asserts that sloped parking spaces and access aisles may damage his vehicle and make it more difficult to safely transfer between his van and the parking lot. (*Id.* ¶ 20.) Additionally, he states that he would like "the option to exit [his] vehicle and enter Simonson Stationstores while [his] vehicle is parked at the gas pump." (*Id.* ¶ 22.)

Ruling on Defendants' Second Motion to Dismiss in May 2018, the Court found that Dalton sufficiently alleged standing to assert claims regarding the slope of the accessible parking spaces, the route to the entrance extending into the traffic lane, and the exterior side of the closest entrance. (May 23, 2018 Order [Doc. No. 53] at 14–15.)

In June 2018, Peter Hansmeier, a salaried employee of Plaintiff's counsel's law firm, Browne Law, LLC, (Hansmeier Decl. [Doc. No. 96] ¶ 2; Sheu Decl., Ex. 1 (Pl.'s Interrog. Response No. 4)), and the brother-in-law of Plaintiff's counsel, appeared for Dalton at a joint inspection of the station. He found that some of the slopes in the south-side accessible parking area and access aisle, as well as the slopes of the maneuvering clearances at the nearest (east) entry, exceeded the ADA limits. (Hansmeier Decl. ¶¶ 10–11.) He also found that the distance from the door to the edge of the curb at the north entrance did not comply with the ADA, nor did certain slopes in that area comply. (Id. ¶ 20.) Defendants' expert, Julee Quarve-Peterson recommended that Defendants move the location of the accessible parking from the south side of the building to the west side and designate the nearest entrance, on the north side, as an accessible entry. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶¶ 4, 6–7.)

At some point between July and October 2018, Defendants undertook Ms. Quarve-Peterson's recommendations and relocated the accessible parking to a single space on the west side of the building, and converted the entrance closest to that space—the north entry—as the designated accessible entrance.  (*Id.* ¶¶ 7, 14.)  They also repaved the relocated accessible parking space, access aisle, ramp, and maneuvering space.  (*Id.*; Ex. 5 to Quarve-Peterson Rpt. (Close-Out Rpt.) at 2).)  Ms. Quarve-Peterson inspected the work and found it compliant with the ADA and ADAAG.  (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 14; Ex. 5 to Quarve Peterson Rpt. (Close-Out Rpt.) at 3).)

In September 2018, Dalton filed the Second Amended Complaint, which is the operative complaint here.  While Dalton acknowledges that Defendants remedied some of the violations by installing signs and marking an access aisle, he alleges that the station lacks two accessible parking spaces and continues to violate the ADA with respect to the east entrance.  (Second Am. Compl. ¶¶ 21–22, 25–26.)  The allegations in the Second Amended Complaint, however, do not take into account the remediation measures that Defendants undertook between July and October 2018.

On October 16, 2018, Mr. Hansmeier returned to the station to inspect the most recent remedial work.  (Supp'l Hansmeier Decl. [Doc. No. 97] ¶ 7.)  He observed the relocated accessible parking spot on the west side of the building, new signage, changes to the surface of the accessible parking space, a new curb ramp and sidewalk between the new parking space and north entrance, and directional signage signaling that the north entrance was accessible.  (*Id.* ¶ 10.)  While he observed that many of the slopes were compliant, he

found that slopes in the hashed-off area between the access aisle and curb ramp, and on the ramp between the parking space and north entrance, were not compliant. (*Id.* ¶¶ 14–17.)

The Pretrial Scheduling Order in this case required that Plaintiff disclose any expert opinions on or before October 1, 2018. (Pretrial Sched. Order [Doc. No. 51] at 4.) He failed to do so. (Sheu Decl. ¶ 7.) Dalton did not seek an extension, and did not disclose his expert report until November 7, 2018, after Defendants had timely disclosed their expert report. (*Id.*, Ex. 10 (Browne Letter transmitting Hansmeier Decls.) Defendants moved to exclude Hansmeier's opinion, arguing that it was both unhelpful and untimely. (Defs. Mem. Supp. Mot. for Summ. J. at 29–38.)

### A. The July 18 Order

In the July 18, 2019 Amended Order on the parties' cross motions for summary judgment ("the July 18 Order") [Doc. No. 120], *Dalton v. Simonson Station Stores, Inc.*, No. 17-cv-4427 (SRN/LIB), 2019 WL 3243257 (D. Minn. July 18, 2019), the Court denied Plaintiff's motion and granted Defendants' motion due to a lack of subject matter jurisdiction. The Court noted that because Dalton sought injunctive relief, he was required to demonstrate the threat of an ongoing or future injury. *Id.* at *7, 9. The Court applied several factors to determine whether Dalton had shown a likelihood of facing a future threat of injury at the Simonson Station, finding that he failed to do so. *Id.* at *9. Accordingly, the Court found that he lacked standing and dismissed his claim without prejudice. *Id.* Shortly thereafter, the Clerk of Court entered judgment [Doc. No. 119].

## B. Parties' Post-Judgment Motions

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff seeks to amend or alter judgment, relying on *Disability Support Alliance v. Heartwood Enters.*, 885 F.3d 543 (8th Cir. 2018). (Pl.'s Mem. Supp. Mot. to Am. J. [Doc. No. 128] at 2–3.) Dalton asserts that the Court erred in granting Defendants summary judgment, arguing that he submitted sufficient evidence to create an issue of fact on the question of standing. (*Id.*) Defendants oppose this motion and contend that the facts here are distinguishable from those in *Heartwood*. (Defs.' Opp'n to Mot. to Am. J. [Doc. No. 138] at 1–5.)

Not only do Defendants oppose Plaintiff's motion, they move for attorneys' fees and non-taxable expenses, as well as taxable costs, in light of the Court's July 18 ruling. In their motion, Defendants argue that they are entitled to $48,078.52 in attorneys' fees and expenses pursuant to the following authority: (1) the ADA's fee-shifting provision; (2) Plaintiff's failure to accept Defendants' Rule 68 settlement offer; and (3) pursuant to 28 U.S.C. § 1927 based on the conduct of Plaintiff's counsel. (Defs.' Mem. Supp. Mot. for Fees & Costs [Doc. No. 135] at 6; Supp'l Sheu Decl. [Doc. No. 148] ¶ 4.) Under Rule 54(d), they seek $145.79 in taxable costs. (Bill of Costs at 1.)

Defendants assert that after Plaintiff filed this suit, they made good faith efforts to remedy the identified ADA violations. (Sheu Decl. [Doc. No. 136] ¶ 2.) Shortly thereafter, Plaintiff's counsel, Ms. Browne, submitted an opening settlement demand of $6,000. (*Id.* ¶ 2–3; *id.*, Ex. 1 (Emails Between P. Browne & G. Shaft).) Ms. Browne also intimated that if Defendants' corporate counsel hired Mr. Sheu as defense counsel, the case would not settle. (*Id.*) ("If you end up going with Mr. Sheu, I want to make sure you and your client

understand the full cost of that route. . . . I do not know how to say this without being impolitic, but of all the cases I have had, . . . , the cases with Mr. Sheu have by far been the most contentious with the most filings and hours incurred on both sides.  Further, I have not settled a single case with him.")  Defendants subsequently hired Mr. Sheu, and did not accept the settlement demand.  (Sheu Decl. ¶ 4.)

It appears that Plaintiff submitted the next settlement demand in February 2018, requesting $6,000 and an automatic door opener at the station.  (*Id.* ¶ 6.)  After Defendants declined to settle, in May 2018, Browne submitted a settlement demand for $7,000, plus the performance of certain remedial work.  (*Id.* ¶ 7; *id.*, Ex. 2 (May 2018 Emails Between P. Browne & E. Sheu).)  In June 2018, Defendants provided Plaintiff with a Rule 68 offer to settle for $1,000 and to provide full remediation of any actual barriers that Plaintiff identified.  (*Id.* ¶ 9; *id.* Ex. 3 (June 2018 Letter & R. 68 Offer from E. Sheu to P. Browne).)  Ms. Browne did not respond to the offer.  (*Id.* ¶ 9.)  In January 2019, Ms. Browne submitted a demand for $30,000 and the performance of remedial work.  (*Id.* ¶ 10; *id.*, Ex. 4 (Jan. 2019 Email from P. Browne to E. Sheu).)  Defendants did not accept the demand, and instead moved for summary judgment.

Plaintiff opposes Defendants' motion for fees and costs, arguing that Defendants are not entitled to such an award under any of the cited authority, and even if they were, Dalton argues, some of the fees are excessive and not properly supported by the record. (Pl.'s Opp'n to Def.'s Mot. for Fees & Costs [Doc. No. 143] at 1–18.)  Likewise, Plaintiff argues that Defendants are not entitled to an award of taxable costs.  (Pl.'s Am. Obj. to Bill of Costs [Doc. No. 145].)

## II.    DISCUSSION

### A. Plaintiff's Motion to Amend or Alter Judgment[1]

Rule 59(e) allows for the filing of a motion to alter or amend a judgment within 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). According to the Eighth Circuit, "Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (citation omitted). The Court has "broad discretion" in determining whether to grant such a motion. *Id.* (citation omitted).

As the Court observed in the July 18 Order, in the context of an ADA claim, "a party's intention to return to a facility that allegedly contains architectural barriers is a threat of future harm that is an injury in fact." *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1022 (D. Minn. 2018) (citing *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F.

---

[1] As a threshold matter, Defendants oppose Plaintiff's motion on procedural grounds.  They argue that Plaintiff's counsel, Ms. Browne, violated this Court's Local Rules by failing to make a good-faith effort to meet and confer prior to filing Plaintiff's Motion to Amend or Alter Judgment.  (Def.'s Opp'n to Mot. to Am. J. at 1–2.)  They contend that on the filing deadline, Ms. Browne left a voicemail message and sent two follow-up emails to defense counsel.  (Sheu Decl. [Doc. No. 139], Exs. 1 & 2.)  Plaintiff's meet-and-confer statement reports that Ms. Browne attempted to meet and confer via phone and email, but did not hear back from defense counsel at the time of filing.  (Meet-and-Confer Statement [Doc. No. 130].)

Local Rule 7.1(a) of this Court sets forth the meet-and-confer requirement prior to filing a motion.  If the moving party is unable to meet and confer prior to filing, "the moving party must promptly meet and confer with the opposing party" afterwards and "must supplement the motion with a meet-and-confer statement." D. Minn. L.R. 7.1(a)(A)-(B).  Plaintiff does not appear to have filed a subsequent meet-and-confer statement. Despite this apparent failing, the Court will nevertheless consider Plaintiff's motion on the merits.

Supp. 3d 1108, 1111 (D. Minn. 2014)). A "plaintiff must have a concrete, particularized and credible plan to return to [the] [d]efendant's place of business for use of the accommodations." *Steelman v. Rib Crib No. 18*, Nos. 11-3422-CV-S-RED, *et al.*, 2012 WL 4026686, at *2 (W.D. Mo. Sept. 12, 2012). A mere intent to return to the defendant's place of business "some day" is insufficient. *Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000).

As noted, Plaintiff relies on *Heartwood*, 885 F.3d at 543, in support of his motion to amend judgment. In *Heartwood*, the Eighth Circuit found that the district court properly determined that a question of disputed fact remained as to standing.[2] The individual plaintiff, Wong, lived in Minneapolis, and the place of public accommodation in question, an office building, was located approximately 12 miles away in St. Paul. *Disability Support Alliance v. Heartwood Enters., LLC*, No. 15-cv-529 (PAM/FLN) [Doc. No. 1-1] (Compl. ¶¶ 9, 11.) Wong submitted a declaration stating that he had tried to visit the office building in order to see a doctor located there, and he had a strong interest in returning, after the removal of the alleged barriers to access. *Heartwood*, 885 F.3d at 546. In his deposition, Wong also testified that he wanted to meet with this particular doctor because he advertised therapies that might be helpful to Wong's condition. *Id.* While the Eighth Circuit questioned Wong's credibility, it affirmed the district court's ruling that he had made a showing of actual injury, sufficient to survive summary judgment, in light of his stated intention to return to the business in the future. *Id.*

---

[2] While the Eighth Circuit agreed that standing remained a fact question, it ultimately affirmed summary judgment on the merits. *Heartwood*, 885 F.3d at 547–48.

While the record here contains Dalton's declaration that he planned to visit the Simonson Station to check on its progress of remediation, and on "future trips with others while traveling further along Interstate Highway 94 to Moorhead," (Dalton Decl. ¶ 7), the Court found this insufficient to demonstrate an injury in fact. *Dalton*, 2019 WL 3243257, at *7–9. Unlike the plaintiff in *Heartwood*, Dalton had no specific plans to visit the Simonson Station on June 24, 2017, and had never visited it prior to that date.[3] *See id.* at *8. Also unlike Wong, who lived near the business in question, Dalton lives approximately 145 miles from the Simonson Station, *id.* (citing *Steelman*, 2012 WL 4026686, at *3), and has no definite plans to return. *Id.* Moreover, as the Court noted, Dalton never stated why or how frequently he travelled through Alexandra, or why or how often he visits Moorhead. *Id.* at *8.

On summary judgment in *Smith v. Bradley Pizza, Inc.*, this Court found that the plaintiff lacked standing for several reasons, including that he failed to identify evidence showing that he faced an immediate and real threat of injury by the defendants. No. 17-cv-2032 (ECT/KMM), 2019 WL 2448575, at *7 (D. Minn. June 12, 2019), *appeal docketed*, No. 19-2474 (8th Cir. July 15, 2019). The Court noted that the plaintiff, Smith, testified that he usually purchased pizza from his local Domino's Pizza in Burnsville, Minnesota, as opposed to the defendant's business in Red Wing, Minnesota, and he had never been to Bradley Pizza, other than on the occasion that prompted his lawsuit. *Id.*

---

[3] As Defendants note, "plaintiff seems to have traveled up north on June 24, 2017 simply to target defendants and others for ADA actions." (Def.'s Opp'n to Mot. to Am. J. at 4 n.1) (citing *Dalton v. City of Alexandria*, No. 18-cv-352 (NEB/LIB), Compl. [Doc. No. 1]) (alleging June 24, 2017 visit).

Further, the Court found that Smith's general plans to visit Red Wing because of its status as a tourist destination were, at most, indicative of "some day" intentions, insufficient to establish a threat of future injury. *Id.*

In contrast, on summary judgment in *Hillesheim v. O.J.'s Café, Inc.*, No. 17-cv-00239-LSC-MDN (D. Neb. Nov. 14, 2018 [Doc. No. 67 at 11–13]), the court there noted that the plaintiff lived in the same city in which the defendant café was located and frequently drove past it. Similarly, in *Sawczyn*, 8 F. Supp.3d at 1112, this Court found on a motion to dismiss that the plaintiff had demonstrated the likelihood of returning to the challenged ATMs in the future, noting that he lived within three and eleven miles from the machines in question and regularly traveled within this zone.

Assuming without deciding that the facts here are distinguishable from those in *Heartwood*, precluding the finding of any genuine dispute of material fact, Plaintiff additionally lacks standing on grounds of mootness, an issue that the parties also presented on summary judgment.

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const., art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). If circumstances change such that "a federal court can no longer grant effective relief, the case is moot." *Beck v. Mo. State High Sch. Activities Ass'n,* 18 F.3d 604, 605 (8th Cir. 1994) (per curiam). But "a defendant's voluntary cessation of a

challenged practice does not deprive a federal court of its power to determine the legality of the practice," so when a defendant argues mootness by voluntary conduct, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted). The party asserting mootness bears the burden of establishing that the case has become moot. *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004).

As the Court noted in the July 18 Order, Dalton is a plaintiff in approximately 43 similar accessibility actions before this Court. *Dalton*, 2019 WL 3243257, at *1 n.3. His attorney, Ms. Browne, appears as counsel of record in approximately 171 similar ADA cases in this District. *Id.* In some of the related cases filed by Browne and her husband, this Court has expressed concern over a legal strategy that appears to involve "a moving litigation target." *See Smith v. RW's Bierstube, Inc.*, No. 17-cv-1866 (PJS/HB), 2017 WL 5186346, at *2 (D. Minn. Nov. 8, 2017) ("Often a defendant quickly remedies the violations cited by Browne in an effort to render the cases moot, and Browne responds by attempting to find other violations and amend her complaint."); *Hillesheim v. Buzz Salons, LLC*, No. 16-cv-2225 (MJD/TNL), 2017 WL 3172870, at *6 (D. Minn. June 19, 2017) (referring to "what appears to be a moving litigation target," and "a litigation strategy designed to draw out these proceedings."). While this litigation strategy may be challenging for defendants, it can pose problems for plaintiffs as well. Here, while Defendants have undertaken remediation measures and significantly changed their parking

area, Plaintiff's Second Amended Complaint concerns the state of the parking lot as Plaintiff encountered it in June 2017.

Though Plaintiff disagrees with Ms. Quarve-Peterson's assessment of compliance with the ADA, he concedes that many aspects of the newly installed parking spot, aisle, and entry are compliant. (*See* Supp'l Hansmeier Decl. ¶¶ 10, 14–15.) Thus, to the extent that Plaintiff's allegations concern these remedied areas, they are moot.

This leaves Dalton's asserted injuries related to the east entry and the lack of two accessible parking spaces in the parking lot. (See Pl.'s Summ. J. Reply [Doc. No. 108] at 1–2; 11–12.) As to the east entry, it is no longer the designated accessible entry. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 14.) Plaintiff maintains that Defendants must nevertheless remedy it, despite the subsequent alterations and designation of the north entry as the accessible entry. (Pl.'s Summ. J. Mem. at 19.) Dalton argues that Defendants' years-earlier renovations, made in 2011–12, required Defendants to make alterations to the east entrance to the maximum extent feasible. (*Id.*) But in 2018, on the advice of an ADA accessibility expert, Defendants initiated significant remediation and have now designated the north entry as the accessible entry. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 14.) Defendants have presented uncontroverted evidence that Dalton's allegations of a noncompliant entry were addressed by relocating the accessible entry.[4] (*Id.*) Moreover,

---

[4] As noted earlier, while Plaintiff relies on the opinion of his purported expert, Mr. Hansmeier, Hansmeier's opinion was not timely disclosed. (Sheu Decl. ¶ 7.) Before the district court in *Heartwood*, in which Ms. Browne's husband served as plaintiff's counsel, the plaintiff also failed to timely disclose Hansmeier as a fact or expert witness. *Disability Support Alliance v. Heartwood Enter., LLC*, No. 15-cv-529 (PAM/FLN), 2016 WL 740411, at *2–3 (D. Minn. 2016). In that case, this Court granted the defendant's motion

while Dalton contends that Defendants must provide *two* accessible entrances, he did not plead this requirement,[5] nor does he demonstrate an injury in fact resulting from the presence of only one designated accessible entry. In fact, he has not visited the Simonson Station since the relocation of the parking space and the designation of the north entrance as the accessible entrance.

Nor do the facts support an injury in fact with regard to the purported need for two accessible parking spaces. To the contrary, Dalton acknowledges that the parking lot has 25 striped parking spaces, for which only one accessible spot is required. (*See* Pl.'s Summ. J. Reply at 12.) But because some customers may park in spots that are not clearly delineated, or the 25 painted markings may fade, or Defendants may choose not to comply in the future, he argues that Defendants should have two spaces. (*Id.*) Not only are these

---

to strike Hansmeier as a witness. *Id.* Defendants in the instant case move to exclude Hansmeier's opinion. (Defs.' Mem. Supp. Mot. for Summ. J. at 29–38.) The Court finds no reasonable basis for Dalton's failure to disclose Hansmeier's opinion here. Due to Plaintiff's late disclosure, Defendants disclosed their expert report *before* Plaintiff disclosed his report. Moreover, this is not the first time that Plaintiff has failed to abide by the rules, whether by seeking leave of Court to file a motion to amend the complaint, or by adhering to the Local Rules' meet-and-confer requirements. For all of these reasons, the Court grants Defendants' request to exclude Hansmeier's opinion.

[5] To the extent that Plaintiff points to general allegations in the Second Amended Complaint requiring Defendants to comply with ADAAG sections 206, 208, 402, 403, 404, 405, 406, and 502, and that the listing of alleged violations "[are] not to be considered all-inclusive," (Second Am. Compl. ¶ 33), the Court finds this insufficient to state a claim for two accessible entrances. This language merely references the requirements of the ADA and the ADAAG. "Alleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing." *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018) (finding, on summary judgment, that the plaintiff's declaration did little more than describe the alleged violations, other than noting that he was deterred from visiting the store in the future).

potential circumstances speculative, Dalton presents no evidence showing that he was unable to find a designated accessible spot on either of his two visits to the station.

Accordingly, the Court finds that Defendants have voluntarily ceased their allegedly discriminatory conduct and the uncontroverted evidence demonstrates that the parking lot and entrance are complaint with the ADA.[6]

In order to meet the burden of establishing that the "challenged conduct cannot reasonably be expected to start up again," *see Friends of the Earth*, 528 U.S. at 189, Defendants submit the declarations of Arch Simonson, the managing partner of Bemidji Management Company, LLC, which owns the Simonson Station in Alexandria, and the secretary and treasurer of Simonson Station Stores, Inc., which leases and operates the Simonson Station. (*See* Oct. 2017 Simonson Decl. [Doc. No. 10] ¶ 2.) In an earlier declaration, Mr. Simonson noted that Defendants take great pride in their facilities and their high level of customer service for customers with disabilities. (*Id.* ¶ 4.) He stated that after buying the property, Defendants renovated the station's restrooms to ensure that they were accessible to disabled customers. (*Id.*) After receiving the Complaint, Defendants initially took measures to rectify Plaintiff's concerns. (*Id.* ¶ 5.) When Plaintiff identified problems with some of the remedial measures, in June 2018, Defendants retained Ms. Quarve-Peterson to evaluate any additional necessary changes to the property. (Sheu Decl., Ex. 6 (Quarve-

---

[6] To the extent that Dalton argues that ADA slope violations remain, the allegations in the Second Amended Complaint concern the state of the parking area prior to the remediation that occurred between July and October 2018. (Second Am. Compl. ¶¶ 18, 21, 26, 32, 33). Due to the fundamental changes in the parking lot since that time, these allegations have been rendered moot, and the Court does not consider any additional findings in Mr. Hansmeier's report, as the Court has excluded it.

Peterson Rpt.) ¶ 3.) Based on her recommendations, they undertook significant renovations. (*Id.* ¶ 14.) Although this lawsuit was the catalyst for Defendants' remediation efforts, an ADA lawsuit was also the catalyst in *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018), where the court found the plaintiff's parking-lot claims moot, noting, among other things, that after the store became aware of the lack of van-accessible parking, it undertook structural changes.

As for Defendants' future plans to maintain these renovations, Simonson attests that "[i]t is our policy to maintain accessible features and cure or fix barriers and possible barriers to access at the Simonson Station Store, including without limitation the exterior parking space, access aisle, and path to the closest entry. We monitor these and other surfaces as they are affected by seasonal issues and the freeze and thaw cycle of Minnesota's winter." (Jan. 2019 Simonson Decl. [Doc. No. 90] ¶¶ 4–5.) For instance, Simonson states that Defendants leveled out an isolated rough spot in the parking lot during routine maintenance in January 2019. (*Id.* ¶¶ 6–8.) The Court finds that Defendants have sufficiently shown their plans to maintain the renovations in the future.

In the instant motion, Plaintiff requests that the Court vacate judgment dismissing the case.[7] (Pl.'s Mem. Supp. Mot. to Am. J. at 6.) Because the Court will supplement the

---

[7] Plaintiff does not expressly request that the Court vacate its July 18 ruling with respect to his objections to Magistrate Judge Brisbois' September 11, 2018 Report & Recommendation, in which the magistrate judge denied Dalton's motion, in part, to amend the complaint. In ruling on Plaintiff's objections, the Court found that Plaintiff's proposed allegations failed to demonstrate the threat of an ongoing or future injury. *Dalton*, 2019 WL 3243257, at *10. Consistent with the Court's ruling here, it will likewise amend the July 18 Order to reflect that the proposed allegations were also rendered moot, and Plaintiff therefore lacks subject matter jurisdiction on this additional basis.

reasoning of its prior ruling to include mootness, it grants Plaintiff's Motion to Amend or Alter Judgment, in part, on this basis, and denies it in part, as to the overall basis for entry of judgment. That basis—a lack of subject matter jurisdiction—remains the same. For all of the foregoing reasons, the Court finds that the allegations in the Second Amended Complaint have been rendered moot, and the Court lacks subject matter jurisdiction over them. The Court will vacate the July 18, 2019 Order, and issue an amended ruling that grants Defendants' summary judgment motion, denies Plaintiff's summary judgment motion, dismisses the case without prejudice, and directs entry of judgment. Because the July 18 Order directed entry of judgment, the Court will likewise enter an amended judgment.

**B. Defendants' Motion for Attorneys' Fees and Costs**

As noted, Defendants seek an award of their attorneys' fees and costs, citing several sources of authority: (1) a provision of the ADA for an award of fees to a prevailing party; (2) Rule 68; and (3) 28 U.S.C. § 1927. Additionally, pursuant to Federal Rule of Civil Procedure 54(d), Defendants seek the taxation of certain costs. (*See* Bill of Costs [Doc. No. 134].)

**1. ADA & Rule 54(d)**

Under the ADA, courts may award reasonable attorneys' fees and costs to the prevailing party. 42 U.S.C. § 12205 ("In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs. . . ."). However, "[a] prevailing defendant in an ADA case

is entitled to attorney fees only in very narrow circumstances." *Buzz Salons*, 2017 WL 3172870, at \*9 (citing *Quasius v. Schwan Food Co.*, No. 08-cv-575 (JNE/JJG), 2010 WL 3218591, at \*1 (D. Minn. Aug. 13, 2010)).

In the context of Title VII discrimination litigation, the Supreme Court has held that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). In *Christiansburg*, the Supreme Court identified two strong considerations that counseled for an attorneys' fee award to a prevailing plaintiff but not to a prevailing defendant: (1) the plaintiff is the designated instrument to vindicate "a policy that Congress considered of the highest priority"; and (2) an award of fees to a prevailing plaintiff constitutes an award against a violator of federal law. *Id.* at 418–19.

While the Eighth Circuit has not expressly applied the *Christiansburg* standard to a defendant's fee petition under the ADA, this Court, and other district courts have done so. *See Buzz Salons*, 2017 WL 3172870, at \*9; *Steelman v. Delano*, No. 4:12-CV-00134 (CEJ), 2012 WL 5616156, at \*3 (E.D. Mo. 2012). In *Steelman*, the court observed that "[a]lthough not yet addressed by the Eighth Circuit, 'each circuit that has addressed the issue has concluded that the considerations that govern fee-shifting under § 706(k) of Title VII or under 42 U.S .C. § 1988 apply to the ADA's fee-shifting provision, because the almost identical language in each indicates Congress' intent to enforce them similarly.'" 2012 WL 5616156, at \*3 (citing *No Barriers, Inc. v. Brinker Chili's Texas, Inc.*, 262 F.3d 496,

498 (5th Cir. 2001); *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2nd Cir. 2001); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1190 (9th Cir. 2001)).

Defendants urge a plain reading of the ADA's provision on attorneys' fees and argue that the *Christiansburg* standard is inapplicable. (Defs.' Mem. Supp. Mot. for Fees & Costs at 9). They cite Supreme Court precedent, arising under different statutes, that adheres to strict rules of statutory construction: *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019), involving whether commercial information is exempt from disclosure under the Freedom of Information Act—unrelated to attorneys' fees, and *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 522–25 (1994), concerning whether prevailing plaintiffs and prevailing defendants must be treated alike in awarding attorneys' fees under the Copyright Act. This authority does not prohibit the application of the *Christiansburg* standard to a fee petition under the ADA.

Defendants also rely on *Poe v. John Deere Co.*, 695 F.2d 1103 (8th Cir. 1982), in support of their argument that the *Christiansburg* standard is inapplicable. (Defs.' Notice of Supp'l Auth. [Doc. No. 150] at 1.) *Poe* does not concern an attorneys' fee award under the ADA, but rather, it concerns Rule 54(d) costs taxed against a plaintiff who lost at trial. In rejecting the application of the *Christiansburg* standard to Rule 54(d) costs, the Eighth Circuit noted the distinction between costs, which "are awarded to prevailing party as a matter of course," and attorney's fees, which are not. *Poe*, 695 F.2d at 1108. The court further addressed the legislative intent behind such distinctions, stating,

> Congress has preferred civil-rights litigants by providing that courts must ordinarily award attorneys' fees if they prevail, but may tax attorneys' fees against them only if their suit was unreasonable, frivolous, meritless, or

> vexatious. Congress has not, however, carved out an exception to Rule 54(d) relieving a losing civil-rights litigant of the burden of bearing the costs of litigation. The rationale for this distinction is clear. Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of suit in the traditional sense are predictable and, compared to the costs of attorneys' fees, small.

*Id.* In light of the Eighth Circuit's express distinctions between attorney's fees under civil rights statutes, and taxable costs under Rule 54(d), *Poe*'s rejection of the *Christiansburg* standard as to Rule 54(d) costs does not mean that the standard is likewise inapplicable to fee awards under the ADA. To the contrary, the rationale quoted above in *Poe* supports an inference that *Christiansburg* would apply to an analysis of attorneys' fees under the ADA.

Applying *Christiansburg* here, the Court cannot say that Dalton's suit was frivolous, unreasonable, or groundless. Indeed, the Court denied Defendant's motion to dismiss many months ago and Defendants undertook two rounds of remediation to the Simonson Station.

But even applying a strict constructionist approach, § 12205 provides that "the court . . . , in its discretion, may" allow an award of reasonable attorneys' fees to the prevailing party. 42 U.S.C. § 12205. Irrespective of *Christiansburg*, Defendants are not the prevailing party. To determine "prevailing party" status, there must be a "material alternation of the legal relationship of the parties," that is "marked by judicial imprimatur." *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) (citations omitted). Here, there has been no adjudication on the merits to materially alter "the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (citations

omitted).  In particular, in *Hillesheim v. Buzz Salons*, this Court noted that where a claim is resolved on grounds of mootness, the parties' legal relationship is unchanged such that the defendant does not become a prevailing party entitled to fees.  2017 WL 3172870, at *9 (citing *Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1267 (9th Cir. 2015)).

This was a hotly contested legal dispute. Both parties filed several motions and Defendants twice undertook remediation of the identified ADA violations.  The Court appreciates Defendants' good faith efforts to remedy its facility, however, based on these facts, the Court, in its discretion, declines to award Defendants attorneys' fees and expenses under § 12205 of the ADA.

For the same reasons, the Court declines to award costs under Rule 54(d).  Rule 54(d)(1) states, "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Again, Defendants are not the "prevailing party," as judgment was not entered in their favor and Plaintiff's claims were involuntarily dismissed.  *Cf. Poe*, 695 F.2d at 1108 (affirming award of Rule 54(d) costs against plaintiff who lost at trial); *Sequa Corp. v. Cooper*, 245 F.3d 1036, 1037–38 (8th Cir. 2001) (affirming district court's jurisdictional authority to award costs under Rule 54(d), even though "a voluntary dismissal without prejudice means that neither party can be said to have prevailed.") The Court thus finds that taxation of costs under Rule 54(d) is inappropriate.

## 2. Rule 68 Offer

Defendants also seek an award of attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 68. In general, Rule 68 concerns a prior offer of judgment, on specified terms, made by the defendant, the offeror, to the plaintiff, the offeree. However, in situations in which the plaintiff/offeree rejects the offer and ultimately the plaintiff obtains a judgment that "is not more favorable than the unaccepted offer, the offeree must pay the [defendant's/offeror's] costs incurred after the offer was made." Fed. R. Civ. P. 68(d). Where the underlying statute defines "costs" to include attorneys' fees, such fees may be included as costs pursuant to Rule 68. *Marek v. Chesny*, 473 U.S. 1, 2 (1975) (finding that attorneys' fees may be awarded to a prevailing party under the Civil Rights Act, which provides that attorneys' fees may be awarded "as part of the costs.").

The Supreme Court has held that "it is clear that [Rule 68] applies only to offers made by the defendant and only to judgments obtained by the plaintiff." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). Citing *Pittari v. American Eagle Airlines, Inc.*, 468 F.3d 1056 (8th Cir. 2006), however, Defendants assert that a defendant's costs "are available even if a plaintiff's ADA claims fail on the merits." (Defs.' Mem. Supp. Mot. for Fees & Costs at 14.)

*Pittari* involved the Eighth Circuit's reversal of an ADA plaintiff's jury verdict and related award of attorney's fees and costs to the plaintiff. 468 F.3d at 1062–63. The appellate court found that there was insufficient evidence in the record to establish that the defendant, American Eagle, regarded the plaintiff, Pittari, as disabled in a major life activity. *Id.* at 1063. Accordingly, the Eighth Circuit overturned the jury's verdict and

reversed the district court's denial of the defendant's motion for judgment as a matter of law. *Id.* As a result, the court reversed the district court's award of attorney's fees and costs to the plaintiff, who was no longer the prevailing party. *Id.* Further, the Eighth Circuit stated that the defendant was entitled to its Rule 68 post-offer costs "because Pittari rejected American Eagle's offer of judgment and failed to receive a more favorable judgment." *Id.* at 1064. The Eighth Circuit remanded the matter to the district court to determine the amount of American Eagle's post-offer costs. *Id.*

On remand, the district court cited the Supreme Court's decision in *Delta Air Lines*, and noted that Rule 68 applies only to judgments obtained by the plaintiff, and "does not apply to judgments in favor of the defendant." *Pittari v. Am. Eagle Airlines*, 243 F.R.D. 317, 318 (W.D. Ark. 2007) (citing 450 U.S. at 352); *see also Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1281 (10th Cir. 2011) (finding that defendant could not rely on Rule 68 to shift costs when it received judgment in its favor, as "Rule 68 only applies to offers made by the party defending against a claim and only to judgments obtained by the plaintiff."); *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 754–55 (9th Cir. 2010) (same); *Park Manor, Ltd. v. Dep't of Health & Human Servs.*, 495 F.3d 433 (7th Cir. 2007) (noting that Rule 68 "penalizes the greedy winning plaintiff but is inapplicable if the defendant wins."); *Allen v. U.S. Steel Corp.*, 665 F.2d 689 (5th Cir. 1982) (citing *Delta Air Lines* and finding that Rule 68 only applies when the district court enters judgment in favor of the plaintiff for an amount less than the defendant's settlement offer). In *Pittari*, because the court of appeals overturned the plaintiff's verdict and entered judgment in the *defendant's* favor, the district court, on remand, thus found that Rule 68 was inapplicable. 243 F.R.D. at 318.

Here, dismissal is without prejudice, and without an award of judgment to either party. Accordingly, the Court finds that Rule 68 is inapplicable because judgment is not in Plaintiff's favor.[8]

### 3. 28 U.S.C. § 1927

Defendants also rely on 28 U.S.C. § 1927 as authority in support of their petition for attorneys' fees and costs. Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Eighth Circuit has advised that sanctions under this provision are warranted "when an attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006).

The Court finds, in its discretion, that this standard is not met here, for the reasons noted above in the denial of fees under Defendants' other authority.

---

[8] Because the Court finds that Rule 68 is inapplicable for the reasons noted above, it does not reach the underlying question of whether attorneys' fees are included as "costs" under § 12205 of the ADA. *Compare* 42 U.S.C. § 12205 (stating that a reasonable attorney's fee, including costs, may be awarded to the prevailing party) *with* 42 U.S.C. § 1988 (providing that a prevailing party in a § 1983 action may be awarded a reasonable attorney's fee "as part of the costs".).

### III.    ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. Plaintiff's Motion to Alter or Amend Judgment [Doc. No. 127] is **GRANTED in part**, and **DENIED in part**;

2. The Judgment [Doc. No. 119], July 16, 2019 Order [Doc. No. 118], July 18, 2019 Amended Order [Doc. No. 120] are **VACATED**;

3. Defendants' Motion for Attorneys' Fees and Non-Taxable Costs [Doc. No. 121] is **DENIED**;

4. Plaintiff's Amended Objection to the Bill of Costs [Doc. No. 145] is **SUSTAINED**; and

5. Defendants' Bill of Costs [Doc. No. 134] is **DENIED**.


Dated:  October 29, 2019                          s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge