# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Aaron Dalton,<br><br>         Plaintiff,<br><br>v.<br><br>Simonson Station Stores, Inc., and<br>Bemidji Management Company L.L.C.,<br><br>         Defendants. | Case No. 0:17-cv-04427 (SRN/LIB)<br><br><br>**SECOND<br>AMENDED MEMORANDUM<br>OPINION AND ORDER** |

Padraigin Browne, Browne Law LLC, 8530 Eagle Point Boulevard, Suite 100, Lake Elmo, Minnesota 55042, for Plaintiff.

Edward Peter Sheu and Brian J. Linnerooth, Best & Flanagan LLP, Sixty South Sixth Street, Suite 2700, Minneapolis, Minnesota 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

Before the Court are the parties' cross motions for summary judgment [Doc. Nos. 86 & 91] and Plaintiff's Objection [Doc. No. 81] to a portion of Magistrate Judge Leo I. Brisbois' September 11, 2018 Amended Order [Doc. No. 79].    For the reasons set forth below, Defendants' Motion for Summary Judgment is granted, Plaintiff's Motion for Summary Judgment is denied, and Plaintiff's Objection is overruled as moot.

## I.   BACKGROUND

### A.  Factual Background

Plaintiff Aaron Dalton ("Dalton"), a resident of Burnsville, Minnesota, suffers from cerebral palsy and uses a wheelchair for mobility, as well as a van with a wheelchair lift. (Second Am. Compl. [Doc. No. 80] ¶¶ 10, 13.)

#### 1.  June 2017 Visit

This case stems from Dalton's June 24, 2017 visit to the parking lot of the Simonson Station, a service station and convenience store in Alexandria, Minnesota. (*See* Sheu Decl. [Doc. No. 88], Ex. 1 (Pl.'s Interrog. Response Nos. 3–4); *id.*, Ex. 3 (Pl.'s Interrog. Response No. 17); Second Am. Compl. ¶¶ 13, 14, 12.)  Defendant Simonson Station Stores, Inc. is the operator and lessee of the station at issue, and Defendant Bemidji Management Company L.L.C. is the owner and lessor of the station.  (Second Am. Compl. ¶¶ 11–12.)

The Simonson Station, built in the 1970s, is an "existing facility" under the Americans with Disabilities Act ("ADA").  (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 5; Hjelle Decl. [Doc. No. 89] ¶ 5.)   In 2011, the parking lot and building were remodeled.  (Hjelle Decl. ¶ 6.)  The contractor that performed the work, Innes Construction, flattened the exterior asphalt and concrete surfaces, including the area around the east entrance, as much as possible, given the pre-existing location of the building, gas pumps, underground gas storage, driving lanes, and need for drainage.  (*Id.* ¶¶ 9–11.)  Innes Construction reduced the slope of the surface in front of the east entrance as much as possible, (*id.* ¶ 11), and the City of Alexandria inspected and approved the concrete and asphalt work.  (*Id.*)

On Dalton's initial visit to the Simonson Station in June 2017, he observed several violations of the ADA and the Americans with Disabilities Act Accessibility Guidelines ("ADAAG")[1] related to proper signage, accessible parking spaces, parking lot access aisles, an accessible entrance, excessive slopes, and a safe route of transfer. (*See* Sheu Decl., Ex. 1 (Pl.'s Interrog. Response No. 6); *see also* Second Am. Compl. ¶¶ 14–24.) At that time, the designated accessible parking was located on the south side of the building, closest to the east entry, which was the designated accessible entry. (*See* Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 6, Ex. 2 at 4.) Based on the conditions that Dalton observed, he did not feel comfortable exiting his vehicle, and he left the Simonson Station. (Dalton Decl. [Doc. No. 95] ¶ 11.)

## 2. Litigation Commences

Following that visit, Dalton commenced this disability discrimination lawsuit in September 2017, asserting violations of the ADA, 42 U.S.C. §§ 12101, and the ADAAG, for which he seeks injunctive relief.[2] (*See generally,* Compl. [Doc. No. 1].)

---

[1] The ADAAG describe minimum requirements for accessibility in new construction and modifications. ADAAG 101.1; 42 U.S.C. § 12186(b).

[2] In the factual allegations of the Second Amended Complaint, Dalton refers, in passing, to the Minnesota Human Rights Act ("MHRA"), stating that "the architectural barriers in this complaint also violate [the] [MHRA]." (Second Am. Compl. ¶ 31.) Attached to his pleading is notice that he gave Defendants of the alleged ADA "and/or" MHRA violations. (Second Am. Compl., Ex. C [Doc. No. 80-3].) Dalton does not invoke the MHRA elsewhere in the pleading, including in his single cause of action, which arises solely under the ADA. (Second Am. Compl. ¶¶ 40–49.) Nor does he refer to the MHRA in his prayer for relief, which refers solely to the ADA. (*Id.* at 11–12.) Accordingly, the Court does not consider his pleading to state a claim under the MHRA, and confines its analysis to the ADA.

In October 2017, Defendants moved to dismiss the initial Complaint, arguing that they had remedied the accessibility violations, rendering Dalton's allegations moot, and the Court therefore lacked subject matter jurisdiction. (*See* Sept. 11, 2018 Am. Order at 1.) Specifically, Defendants had added an additional reserved parking space, an access aisle adjacent to each reserved space, and signage identifying the reserved parking. (*See* May 23, 2018 Order [Doc. No. 53] at 3.) Plaintiff did not respond to Defendants' motion and instead filed an Amended Complaint without seeking leave of court. Among other things, Dalton alleged that the reserved parking spaces were too steeply sloped, that the route from the reserved spaces to the entrance extended into the vehicular traffic lane, and interior counters were not the proper height at a delicatessen inside the Simonson Station. (Am. Compl. [Doc. No. 13] ¶¶ 18, 22–23.) Additionally, Dalton alleged that Defendants' remediation efforts were insufficient. (*Id.* ¶¶ 26–27.)

In November 2017, Defendants filed their Second Motion to Dismiss, arguing that: (1) because Plaintiff failed to obtain the Court's leave to amend his allegations, they should be stricken, (Defs.' Mem. Supp. Second Mot. Dismiss [Doc. No. 21] at 6, 8–10); (2) the Court still lacked subject matter jurisdiction on grounds of standing and mootness, (*id.* at 10–20); and (3) the amended pleading failed to allege plausible violations of the ADA. (*Id.* at 20–26.)

### 3. February 2018 Visit

While Defendants' Second Motion to Dismiss was under advisement, in February 2018, the Court directed the parties to meet and confer at the station to determine whether any of Defendants' changes had remedied Plaintiff's concerns. (*See* Feb. 18, 2018 Order [Doc. No. 35] at 1.) In connection with the parties' on-site meeting on February 21, 2018, Dalton

made his second and final visit to the Simonson Station. (Dalton Decl. ¶ 14.) Dalton contends that on that visit, the person driving his van could not pull all the way into an accessible-designated spot. (*Id.* ¶ 11.) And while Dalton acknowledges that he was able to traverse the cross-sloped route to the door in his wheelchair, he felt uncomfortable doing so because he was traveling through a traffic lane. (*Id.* ¶¶ 15–16.) He contends that he was able to maneuver onto the ramp and into the interior of the store, but required the help of a stranger. (*Id.* ¶ 17.) Dalton fears that "sloped parking spaces and access aisles may damage [his] vehicle and make it more difficult to make a safe transfer between [his] vehicle and the parking lot." (*Id.* ¶ 20.) In addition, Dalton "would like the option to exit [his] vehicle and enter Simonson Stationstores while [his] vehicle is parked at the gas pump." (*Id.* ¶ 22.)

Dalton also attests that he had intended to return to the Simonson Station in the summer of 2018, but his plans were interrupted, and he has not returned. (*Id.* ¶ 6.) In the future, he "plan[s] to visit Simonson Stationstores both to check on the progress [the station] is making to full accessibility and to stop there on [ ] future trips with others while traveling further along Interstate Highway 94 to Moorhead." (*Id.* ¶ 7.)

In May 2018, this Court ruled on Defendants' Second Motion to Dismiss, finding that several of Plaintiff's new allegations were properly considered "supplemental," as they referred to events that happened *after* the date of the operative complaint. (May 23, 2018 Order at 5.) Because Dalton failed to seek leave of Court and failed to provide Defendants with reasonable notice of the supplementations, the Court denied his motion to add allegations concerning events post-dating the September 27, 2017 filing of the Complaint. (*Id.*) As to the remaining claims concerning the slope of the accessible parking spaces, the route to the

entrance extending into the vehicular traffic lane, and the exterior side of the closest customer entrance, the Court found that Plaintiff's allegations concerned events that fell within the initial pleading period. (*See id.* at 11.) The Court also found that these allegations conferred standing sufficient to survive a motion to dismiss, with the exception of Dalton's claim based on the lack of an accessible dining surface, since he did not allege that he had ever encountered this purported violation. (*Id.* at 10–11.)

### 4. July 2018 Site Inspection

In June 2018, Plaintiff requested a site inspection at the Simonson Station. The Court directed the parties to conduct the inspection on July 11, 2018 [Doc. Nos. 56–58], limited to the areas relevant to the pleadings in the Amended Complaint. (*See* July 20, 2018 Order [Doc. No. 62] at 2.)

Defendants hired Julee Quarve-Peterson as an expert to inspect the exterior of Simonson Station and make recommendations on their behalf. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶¶ 7–8.) Ms. Quarve-Peterson, an Accessibility Specialist certified by the State of Minnesota since 1996, has provided accessibility trainings and seminars and has served as an expert consultant or witness in over 300 ADA cases involving allegations of noncompliant architectural barriers. (*Id.* ¶ 2.) Following her inspection on July 11, 2018, Ms. Quarve-Peterson recommended that Defendants move the location of the existing accessible parking from the south side of the building to the west side and designate the nearest entrance, on the north side, as an accessible entry. (*Id.* ¶¶ 4, 6–7.)

Peter Hansmeier conducted the July 11, 2018 inspection on Plaintiff's behalf. Hansmeier is a salaried employee of Plaintiff's counsel's law firm, Browne Law, LLC,

(Hansmeier Decl. [Doc. No. 96] ¶ 2; Sheu Decl., Ex. 1 (Pl.'s Interrog. Response No. 4)), and is Ms. Browne's brother-in-law. *See Hillesheim v. RVD Real Estate Props. LLC*, No. 8:18CV449, 2019 WL 1900384, at *3 (D. Neb. Apr. 20, 2019) (noting familial relationship). He is also a Certified Accessibility Specialist, having obtained his certification in 2016. (Hansmeier Decl. ¶ 3.) At the inspection, he found that some of the slopes in the south-side accessible parking spaces and access aisle exceeded the ADA limits, (*id.* ¶¶ 10–11), and the slopes of the maneuvering clearances at the nearest (east) entry were too steep. (*Id.* ¶ 18, 21.) Additionally, he found that the distance from the door to the edge of the curb at the north entrance did not comply with the ADA. (*Id.* ¶ 20.) Further, as to the north entrance, he found certain slopes in that area were not compliant.[3] (*Id.* ¶¶ 19–21.)

At some point between July and October 2018, after receiving Ms. Quarve-Peterson's recommendations, Defendants made changes to the exterior of the station. They relocated the accessible parking by creating a single accessible space on the west side of the building, and converted the entry closest to that parking space—the north entry—to be the designated accessible entry. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶¶ 7, 14.) In addition, they repaved the accessible parking space, accessible access aisle, ramp and maneuvering space leading to the north entry of the building. (*Id.*; Ex. 5 to Quarve-Peterson Rpt. (Close-Out Rpt.) at 2).) In September 2018, Ms. Quarve-Peterson inspected the remedial work and

---

[3] Defendants' expert, Ms. Quarve-Peterson, observed Mr. Hansmeier's methodology during the inspection and states that Plaintiff's counsel, Ms. Browne, directed Hansmeier's measurements and photographs. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 13.)

attested that it was compliant with the ADA and ADAAG.[4]  (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 14; Ex. 5 to Quarve Peterson Rpt. (Close-Out Rpt.) at 3).)

On October 16, 2018, Mr. Hansmeier returned to Simonson Station, where he inspected the remedial work done after the July inspection.  (Supp'l Hansmeier Decl. [Doc. No. 97] ¶ 7.)  He observed that Defendants had relocated the accessible parking to a new, single accessible parking space on the west side of the station.  (*Id.* ¶ 10.)  He also noted new signage, changes to the surface of the accessible parking space, a new curb ramp and sidewalk between the new parking space and the north entrance, and directional signage indicating that the north entrance was accessible.  (*Id.*)  Mr. Hansmeier took measurements, and opines that while many of the slopes are compliant, (*id.* ¶¶ 14–15), slopes in the hashed-off area between the access aisle and curb ramp, and on the ramp between the parking space and the north entrance, are not compliant.  (*Id.* ¶¶ 16, 17.)  He further states that because the east entrance has not been altered, his earlier findings of noncompliance remain concerning that entrance. (*Id.* ¶ 22.)

Mr. Arch Simonson is the managing partner of Bemidji Management Company, LLC, which owns the Simonson Station in Alexandria, and the secretary and treasurer of Simonson Station Stores, Inc., which leases and operates the Simonson Station.  (*See* Oct. 23, 2017

---

[4] Ms. Quarve-Peterson also compared the station's exterior conditions to those that Dalton regularly encounters at his residential building, finding that "none of [Plaintiff's residential exterior] surfaces fully comply with the ADAAG, Uniform Federal Accessibility Standards, or Minnesota Building Code 1341, and that the deviations were as bad and often worse than the deviations Mr. Dalton alleged at the Simonson Station Store."  (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 12.)

Simonson Decl. [Doc. No. 10] ¶ 2.)  In support of Defendants' summary judgment motion, he states that certain slopes that Hansmeier noted in his Supplemental Declaration occurred after Defendants had resurfaced the parking space in the summer of 2018, leading to a "rough spot" that was apparently caused by a car tire.  (Jan. 11, 2019 Simonson Decl. [Doc. No. 90] ¶ 3.)  Simonson states that Defendants performed routine maintenance in January 2019 to level out the rough spot, which is now level with the surface of the accessible parking space. (*Id.* ¶¶ 6, 8, Ex. 1 to Simonson Decl. (photos).)

### 5.    Second Amended Complaint & Expert Disclosures

On July 22, 2018, Dalton filed a Second Motion to Amend, (Pl.'s Mot. to Amend [Doc. No. 64]), which Defendants opposed on several bases.  (Defs.' Opp'n to Mot. to Amend [Doc. No. 75] at 2, 8–10.)

On September 11, 2018, Magistrate Judge Leo Brisbois granted Plaintiff's motion in part and denied it in part.  (Sept. 11, 2018 Am. Order.)  He denied amendments that concerned observations that Plaintiff appeared to have made on his return visit to the Simonson Station on February 21, 2018, finding that these amendments would be futile because Dalton lacked Article III standing as to these allegations.  (*Id.* at 13–18.) Magistrate Judge Brisbois noted that while Plaintiff alleged that he exited his car on that visit, he did not assert that he sought "to patronize or utilize Simonson Station that day or even attempted to enter the building in any manner."  (*Id.* at 16.)  Nor did he allege that the new observations made in February 2018 deterred him from visiting the station at that time.  (*Id.* at 16–17) (citing *Hillesheim v. Holiday Stationstores*, 900 F.3d 1007 (8th Cir. 2018)).  Plaintiff objects to the portion of the magistrate

judge's decision denying leave to amend, which the Court addresses in greater detail below. (*See* Pl.'s Objs. at 5.)

On September 13, 2018, Dalton filed the Second Amended Complaint, which is the operative complaint. Certain allegations in the Second Amended Complaint pre-date the changes that Defendants made between July to October 2018. Plaintiff acknowledges that Defendants remedied some of the violations by installing signs and marking an access aisle. (Second Am. Compl. ¶ 25.) However, he alleges that the station lacks two accessible parking spaces, (*id.* ¶ 26), and continues to assert ADA violations with respect to the east entrance. (*Id.* ¶¶ 21–22.)

The Pretrial Scheduling Order required that Plaintiff disclose any expert opinions on or before October 1, 2018, and that Defendants disclose their expert opinions on or before November 1, 2018. (Pretrial Sched. Order [Doc. No. 51] at 4.) Defendants attest that Plaintiff failed to meet the deadline, nor did he request or obtain an extension. (Sheu Decl. ¶ 7.) Defendants disclosed Ms. Quarve-Peterson's expert report and attachments on October 31, 2018, consistent with the Scheduling Order. (*Id.* ¶ 8, Ex. 6 (Quarve-Peterson Rpt.).) In emails exchanged between counsel, Plaintiff's counsel, Ms. Browne, stated her apparently mistaken belief that she had disclosed Mr. Hansmeier's report via email on October 1, 2018. (*See id.*, Ex. 9 (Nov. 2–7 emails between counsel).) However, in response to defense counsel's request that she forward a copy of the transmitting email, Ms. Browne apparently did not do so. (*See id.*) Plaintiff disclosed Mr. Hansmeier's "original October 1, 2018 declaration" and a supplemental declaration on November 7, 2018. (*Id.*, Ex. 10 (Browne Letter transmitting Hansmeier Decls.).)

## B. Summary Judgment Arguments

On summary judgment, Dalton argues that he has demonstrated a real and immediate threat of future injury by Defendants, sufficient to confer Article III standing. (Pl.'s Mem. Supp. Mot. for Summ. J. ("Pl.'s Mem.") [Doc. No. 93] at 7–11.) He asserts that he has demonstrated that Defendants have discriminated against him, in violation of the ADA. (*Id.* at 11–13.) He argues that barriers associated with the east entrance presented an architectural barrier to his access at the time of his June 2017 visit, remain noncompliant with the ADA, and Defendants continue to discriminate against him by not remediating these barriers. (*Id.* at 15–18.) He further contends that he lacked accessible parking during his June 2017 visit, this lack of accessible parking constituted discrimination, and the discrimination remains. (*Id.* at 18–24.) Also, he contends that the station lacks two accessible parking spots. (*Id.*)

Defendants again argue that Dalton lacks standing to maintain this action, as he lacks an injury in fact, and his claims are moot. (Defs.' Mem. Supp. Mot. for Summ. J. ("Defs.' Mem.") [Doc. No. 100] at 2, 12–19. ) They contend that Dalton's complaints related to the east entrance have been rendered moot due to the relocation of the accessible entrance to the north side of the building, as well as Dalton's complaints regarding the formerly designated parking spaces. (*Id.* at 15, 19–22.) They also argue that Dalton did not plead that Defendants' failure to provide two accessible entrances violates the ADA, he has failed to identify any alternative means of remediating the alleged violations, and he has further failed to show that changes made during remodeling in 2011 did not render the east parking spaces and east entry ADA-compliant to the maximum extent feasible, or that doing so is feasible now. (*Id.* at 19–

22.)  Finally, Defendants argue that the opinion of their expert, Ms. Quarve-Peterson is helpful, reliable, and uncontroverted, (*id.* at 10–12), in contrast to that of Mr. Hansmeier, whose opinion they find unhelpful, untimely, and inadmissible.  (*Id.* at 13–16.)

In support of Plaintiff's reply memorandum, Dalton submits a declaration from his counsel, Ms. Browne.  (*See* Second Browne Decl. [Doc. No. 109].)   Ms. Browne refers to two alternative forms of remediation—an automatic door for the east entrance and alterations to the sidewalk at the east entrance, (*id.* ¶ 1)—changes that Defendants' expert, Ms. Quarve-Peterson, opines are unnecessary and not feasible.  (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶¶ 8–9; Supp'l Quarve-Peterson Rpt. [Doc. No. 105] ¶ 3–10).)

## II.    DISCUSSION

### A.  Summary Judgment

#### 1.  Standard of Review

A court may grant a party summary judgment if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).  A fact dispute is "material" only if its resolution would affect the outcome of the suit, and "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In considering a summary judgment motion, the Court must "view[ ] the evidence in the light most favorable to the nonmoving party," *Grinnell Mut.*

*Reinsurance Co. v. Schwieger*, 685 F.3d 697 (8th Cir. 2012), and must not "weigh the evidence and determine the truth of the matter itself," *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012). "In essence," the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderso*n, 477 U.S. at 251-52.

As noted, Defendants' primary argument is that the Court lacks subject matter jurisdiction. (*See, e.g.,* Defs.' Mem. at 12–22.) Recently, in a similar case, *Smith v. Bradley Pizza, Inc.*, No. 17-cv-2032 (ECT/KMM), 2019 WL 2448575, at *2 (D. Minn. June 12, 2019), *appeal docketed*, No. 19-2474 (8th Cir. July 15, 2019), the Court addressed differences between challenges to subject-matter jurisdiction through a "factual-attack" on a Rule 12(b)(1) motion to dismiss, and a summary judgment motion under Rule 56. Unlike the standard of review under Rule 56, described above, in a Rule 12(b)(1) factual attack, the court may resolve disputed facts without applying a presumption of truth to the non-moving party's allegations or evidence. *Id.* (citing *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015); *Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990)).

Noting that some courts have found that questions of subject matter jurisdiction should not be resolved on summary judgment, *id.* (citing, e.g., *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)), the Court nevertheless found it appropriate to do so in *Bradley Pizza* for three reasons. *Id.* First, in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992), the U.S. Supreme Court suggested that summary judgment is an appropriate means to address subject matter jurisdiction.

*Bradley Pizza*, 2019 WL 2448575, at \*2.  Second, the Eighth Circuit Court of Appeals has reviewed district court rulings on summary judgment for lack of subject matter jurisdiction and has not questioned the propriety of the district court's actions.[5]  *Id.* (citing, e.g., *Hillesheim*, 900 F.3d at 1009–10).  Third, the result would have been the same if subject matter jurisdiction were adjudicated under Rule 12(b)(1).  *Id.*

The Court agrees with this approach and reasoning, and likewise would reach the same outcome under either standard.  Accordingly, the Court considers the parties' subject matter jurisdiction arguments under Rule 56.

### 2.  Standing and Mootness

The ADA prohibits property owners or lessees from discriminating against persons with disabilities by preventing them from fully and equally accessing and enjoying public accommodations.  42 U.S.C. § 12182(a).  There is no dispute here that Plaintiff is a person with a disability and Simonson Station is a place of public accommodation.  (Sheu Decl., Ex. 7 (Defs.' Response to Request for Admission Nos. 1 & 2).)  The only issue is whether Defendants discriminated against Plaintiff by denying him full and equal access to their facility.  Dalton asserts injuries related to the east entry and the lack of two accessible parking spaces in the parking lot.[6]  (*See* Pl.'s Reply [Doc. No. 108] at 1–2; 11–12.)

---

[5] The Court noted, however, that the Eighth Circuit has also approved a district court's actions in recharacterizing a summary judgment motion challenging subject matter jurisdiction as a Rule 12(b)(1) motion to dismiss.  *Bradley Pizza*, 2019 WL 2448575, at \*2 (citing *Osborn*, 918 F.2d at 728).

[6] To the extent that Dalton claims an injury by not having "the option" to leave his van at the gas pumps and enter the gas station through the closest entry, which is "most likely the east entrance," (Dalton Decl. ¶ 22), the Court rejects this theory.  He did not include this

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const., art. III, § 2, cl. 1. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). If circumstances change such that "a federal court can no longer grant effective relief, the case is moot." *Beck v. Mo. State High Sch. Activities Ass'n,* 18 F.3d 604, 605 (8th Cir. 1994) (per curiam). But "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," so when a defendant argues mootness by voluntary conduct, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted). The party asserting mootness bears the burden of establishing that the case has become moot. *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004).

Dalton is a plaintiff in approximately 43 similar accessibility actions before this Court, and his attorney appears as counsel of record in approximately 171 similar ADA cases in this District. *See, e.g., Dalton v. NPC Int'l, Inc.*, No. 17-cv-4012 (PAM/LIB); *Smith v. Bradley Pizza, Inc.*, No. 17-cv-2032 (ECT/KMM); *Hillesheim v. Holiday*

---

allegation in his Second Amended Complaint, his desire for this option is not an "injury" that he has encountered, and he cites no legal authority requiring such an arrangement. Rather, Ms. Quarve-Peterson opines that the "ADAAG does not require accessible paths of entry from a gas station's pumps." (Quarve-Peterson Supp'l Rpt. [Doc. No. 105] ¶ 10.)

*Stationstores, Inc.*, No. 16-cv-1222 (MJD/DTS); *Davis v. Commander Cos., LLC*, No. 15-cv-4133 (LIB). In some of the related cases filed by Browne and her husband, this Court has expressed concern over a legal strategy that appears to involve "a moving litigation target." *See Smith v. RW's Bierstube, Inc.*, No. 17-cv-1866 (PJS/HB), 2017 WL 5186346, at * 2 (D. Minn. Nov. 8, 2017) ("Often a defendant quickly remedies the violations cited by Browne in an effort to render the cases moot, and Browne responds by attempting to find other violations and amend her complaint."); *Hillesheim v. Buzz Salons, LLC*, No. 16-cv-2225 (MJD/TNL), 2017 WL 3172870, at *6 (D. Minn. June 19, 2017) (referring to "what appears to be a moving litigation target," and "a litigation strategy designed to draw out these proceedings."). Here, while Defendants have undertaken remediation measures and significantly changed their parking area, Plaintiff's Second Amended Complaint concerns the state of the parking lot as Plaintiff encountered it in June 2017.

Though Plaintiff disagrees with Ms. Quarve-Peterson's assessment of compliance with the ADA, he concedes that many aspects of the newly installed parking spot, aisle, and entry are compliant. (*See* Supp'l Hansmeier Decl. ¶¶ 10, 14–15.) Thus, to the extent that Plaintiff's allegations concern these remedied areas, they are moot.

This leaves Dalton's asserted injuries related to the east entry and the lack of two accessible parking spaces in the parking lot. (See Pl.'s Reply at 1–2; 11–12.) As to the east entry, it is no longer the designated accessible entry. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 14.) Plaintiff maintains that Defendants must nevertheless remedy it, despite the subsequent alterations and designation of the north entry as the accessible entry. (Pl.'s Mem. at 19.) Dalton argues that Defendants' years-earlier renovations, made in

2011–12, required Defendants to make alterations to the east entrance to the maximum

extent feasible. (*Id.*) But in 2018, on the advice of an ADA accessibility expert,

Defendants initiated significant remediation and have now designated the north entry as

the accessible entry. (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 14.) Defendants have

presented uncontroverted evidence that Dalton's allegations of a noncompliant entry were

addressed by relocating the accessible entry.[7] (*Id.*) Moreover, while Dalton contends that

Defendants must provide *two* accessible entrances, he did not plead this requirement,[8] nor

does he demonstrate an injury in fact resulting from the presence of only one designated

---

[7] While Plaintiff relies on the opinion of his purported expert, Mr. Hansmeier, Hansmeier's opinion was not timely disclosed. (Sheu Decl. ¶ 7.) In *Disability Support Alliance v. Heartwood Enter., LLC*, No. 15-cv-529 (PAM/FLN), 2016 WL 740411, at *2–3 (D. Minn. 2016), an ADA accessibility case in which Ms. Browne's husband served as plaintiff's counsel, the plaintiff also failed to timely disclose Hansmeier as a fact or expert witness. In that case, this Court granted the defendant's motion to strike Hansmeier as a witness. *Id.* Defendants in the instant case move to exclude Hansmeier's opinion. (Defs.' Mem. at 29–38.) The Court finds no reasonable basis for the failure to disclose Hansmeier's opinion here. Due to Plaintiff's late disclosure, Defendants disclosed their expert report *before* Plaintiff disclosed his report. Moreover, this is not the first time that Plaintiff has failed to abide by the rules, as Plaintiff previously failed to seek leave of Court to amend the complaint, among other things. For all of these reasons, the Court grants Defendants' request to exclude Hansmeier's opinion.

[8] To the extent that Plaintiff points to general allegations in the Second Amended Complaint requiring Defendants to comply with ADAAG sections 206, 208, 402, 403, 404, 405, 406, and 502, and that the listing of alleged violations "[are] not to be considered all-inclusive," (Second Am. Compl. ¶ 33), the Court finds this insufficient to state a claim for two accessible entrances. This language merely references the requirements of the ADA and the ADAAG. "Alleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing." *Holiday Stationstores, Inc.*, 900 F.3d at 1010 (finding, on summary judgment, that the plaintiff's declaration did little more than describe the alleged violations, other than noting that he was deterred from visiting the store in the future).

accessible entry.  In fact, he has not visited the Simonson Station since the relocation of the parking space and the designation of the north entrance as the accessible entrance.

Nor do the facts support an injury in fact with regard to the purported need for two accessible parking spaces.  To the contrary, Dalton acknowledges that the parking lot has 25 striped parking spaces, for which only one accessible spot is required.  (*See* Pl.'s Reply at 12.)  But because some customers may park in spots that are not clearly delineated, or the 25 painted markings may fade, or Defendants may choose not to comply in the future, he argues that Defendants should have two spaces.  (*Id*.)  Not only are these potential circumstances speculative, Dalton presents no evidence showing that he was unable to find a designated accessible spot on either of his two visits to the station.

Accordingly, the Court finds that Defendants have voluntarily ceased their allegedly discriminatory conduct and the uncontroverted evidence demonstrates that the parking lot and entrance are complaint with the ADA such that violations are not reasonably likely to occur.[9]

In order to meet the burden of establishing that the "challenged conduct cannot reasonably be expected to start up again," *see Friends of the Earth*, 528 U.S. at 189, Defendants submit the declarations of Arch Simonson, the managing partner of Bemidji Management Company, LLC, and the secretary and treasurer of Simonson Station Stores,

---

[9] To the extent that Dalton argues that ADA slope violations remain, the allegations in the Second Amended Complaint concern the state of the parking lot prior to the remediation that occurred between July and October 2018.  (Second Am. Compl. ¶¶ 18, 21, 26, 32, 33).  Due to the fundamental changes in the parking lot since that time, these allegations have been rendered moot, and the Court does not consider any additional findings in Mr. Hansmeier's report, as the Court has excluded it.

Inc.  (*See* Oct. 23, 2017 Simonson Decl. ¶ 2.)  In an earlier declaration, Mr. Simonson noted that Defendants take great pride in their facilities and their high level of customer service for customers with disabilities.  (*Id.* ¶ 4.)  He stated that after buying the property, Defendants renovated the station's restrooms to ensure that they were accessible to disabled customers.  (*Id.*)  After receiving the Complaint, Defendants initially took measures to rectify Plaintiff's concerns.  (*Id.* ¶ 5.)  When Plaintiff identified problems with some of the remedial measures, in June 2018, Defendants retained Ms. Quarve-Peterson to evaluate any additional necessary changes to the property.  (Sheu Decl., Ex. 6 (Quarve-Peterson Rpt.) ¶ 3.)  Based on her recommendations, they undertook significant renovations.  (*Id.* ¶ 14.)  Although this lawsuit was the catalyst for Defendants' remediation efforts, an ADA lawsuit was also the catalyst in *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018), where the court found the plaintiff's parking-lot claims moot, noting, among other things, that after the store became aware of the lack of van-accessible parking, it undertook structural changes.

As for Defendants' future plans to maintain these renovations, Simonson attests that "[i]t is our policy to maintain accessible features and cure or fix barriers and possible barriers to access at the Simonson Station Store, including without limitation the exterior parking space, access aisle, and path to the closest entry.  We monitor these and other surfaces as they are affected by seasonal issues and the freeze and thaw cycle of Minnesota's winter." (Jan. 11, 2019 Simonson Decl. ¶¶ 4–5.)  For instance, Simonson states that Defendants leveled out an isolated rough spot in the parking lot during routine maintenance in January 2019.  (*Id.* ¶¶ 6–8.)  The Court finds that Defendants have sufficiently shown their plans to maintain the renovations in the future.

For all of the foregoing reasons, the Court finds that the claims in the Second Amended Complaint have been rendered moot, and the Court lacks subject matter jurisdiction over them.

In addition, because "standing is not dispensed in gross," a plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates*, —— U.S. ——, 137 S. Ct. 1645, 1650 (2017). Under the provisions of the ADA at issue here, injunctive relief is available for a private right of action, *see* 42 U.S.C. § 12188(a)-(b), for which a plaintiff must demonstrate the threat of an ongoing or future injury. *Park v. Forest Serv. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000); *Young Am.'s Found. v. Kaler*, 370 F. Supp. 3d 967, 979 (D. Minn. 2019)). Thus, in the context of an ADA claim, "a party's intention to return to a facility that allegedly contains architectural barriers is a threat of future harm that is an injury in fact." *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1022 (D. Minn. 2018) (citing *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014)).[10] A "plaintiff must have a concrete, particularized and credible plan to return to [the] [d]efendant's place of business for use of the accommodations." *Steelman v. Rib Crib No. 18*, Nos. 11-3422-CV-S-RED, *et al.*, 2012 WL 4026686, at *2 (W.D. Mo. Sept. 12, 2012). A mere intent to

---

[10] *But see Hillesheim v. Casey's Retail Co.*, No. 16-cv-61 (PJS/FLN), 2016 WL 3676164, at *3 (D. Minn. July 6, 2016) (rejecting notion that plaintiff's plans to return to the defendant's facility were critical to standing, although finding them critical to whether the plaintiff might obtain injunctive relief). The Court finds *Hillesheim* distinguishable, as it considered standing on the less stringent standard of review applicable to a motion to dismiss. *See Sawczyn*, 8 F. Supp. 3d at 1112. Moreover, the Court is mindful of the Supreme Court's ruling in *Town of Chester*, which requires standing for each claim and for each form of relief sought. 137 S. Ct. 1645, 1650.

return to the defendant's place of business "some day" is insufficient. *Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000).

While the Eighth Circuit has not endorsed a particular test to determine whether a plaintiff has shown a likelihood of future return to a place of public accommodation, district courts in this circuit have considered the following factors: (1) proximity of the place of public accommodation to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the defendant. *Bradley Pizza*, 314 F. Supp. 3d at 1022–23 (citing *Sawczyn*, 8 F. Supp. 3d at 1111); *see also Steelman*, 2012 WL 4026636, at *2; *Indep. Project, Inc. v. Elm Grove LLC*, No. 4:18-CV-1779-AGF, 2019 WL 498870, at *3 (E.D. Mo. Feb. 8, 2019); *White v. Coin Laundry*, No. 8:16CV42, 2017 WL 2656101, at *2 (D. Neb. June 20, 2017), *Barfield v. Am. Enter. Props. Neb.*, No. 8:16CV19, 2016 WL 4684106, at *2 (D. Neb. Aug. 17, 2016)).

In this Court's ruling on Defendants' Motion to Dismiss, it found that Dalton had plausibly pleaded his intention to return to the station. (May 23, 2018 Order at 12.) But as the Court noted, "[t]he requirement at the pleading stage is not demanding." (*Id.*) (citing *Sawczyn*, 8 F. Supp.3d at 1112; *Bradley Pizza*, 314 F. Supp.3d at 1023). At summary judgment, however, there must be evidence in the record that sufficiently shows an intention to return to the facility and encounter the same threat of injury. Such evidence is lacking here.

Dalton lives in Burnsville, Minnesota, approximately 145 miles from Simonson Station in Alexandria, Minnesota.[11] "As the distance between a plaintiff's residence and a public accommodation increases, the likelihood of future harm decreases," particularly where the distance exceeds 100 miles. *Steelman*, 2012 WL 4026686, at *3 (finding likelihood of future harm not established where distance was 130 miles) (citing *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1163–64 (C.D. Cal. 2005) (concluding that this factor weighed against plaintiff, who lived over 104 miles away); *Delil v. El Torito Rest.*, 1997 WL 714866 at *3 (N.D. Cal. 1997) (same, involving distance of over 100 miles); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (same finding, in part, because plaintiff lived 280 miles from hotel in question); *Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995) (finding lack of future harm where plaintiff moved to a different state); *Disabled Patriots of Am., Inc. v. City of Trenton*, No. 07-CV-3165 (FLW), 2008 WL 4416459 (D. N.J. Sept. 24, 2008) (noting decreased likelihood of future harm where plaintiff lived over 100 miles away from defendant's business)). This factor weighs against Plaintiff.

As to his past patronage of Simonson Station, Plaintiff never visited the station prior to his visit in July 2017, en route to Moorhead, Minnesota. (Sheu Decl., Ex. 1 (Pl.'s Interrog. Answer Nos. 3, 4); *id.*, Ex. 2 (Pl.'s Response to Requests for Admission Nos. 1, 2); *id.*, Ex. 3 (Pl.'s Interrog. Answer No. 17).) This weighs against Plaintiff. Regarding

---

[11] The Court takes judicial notice of the distance between Plaintiff's home address in Burnsville, found in his interrogatory answers, and the address of the Simonson Station in Alexandria. *See* Google Maps, https://www.google.com/maps/dir/ (last visited Oct. 29, 2019) (calculating a distance of 145 miles).

the definiteness of his future plans to return, he states that he plans to visit the station "both to check on the progress [Defendants] [are] making to full accessibility and to stop there on my future trips with others while traveling further along Interstate Highway 94 to Moorhead." (Dalton Decl. ¶ 7.) While he had general plans to return "to Northern Minnesota" in the summer of 2018, he concedes that those plans fell through. (*Id*. ¶ 6.) These future plans lack definiteness.

Plaintiff's declaration also fails to establish frequency of travel in the Alexandria area. Dalton does not indicate why or how often he visits Moorhead, Minnesota, much less Alexandria, Minnesota. This factor also weighs against Plaintiff.

These facts stand in contrast to cases in which courts have found that plaintiffs demonstrated the likelihood of future harm sufficient to confer standing for injunctive relief. For example, on summary judgment in *Hillesheim v. O.J.'s Café, Inc.*, No. 17-cv-00239-LSC-MDN (D. Neb. Nov. 14, 2018 [Doc. No. 67 at 11–13]), the court noted that Hillesheim lived in the same city in which the defendant café was located and frequently drove past it. Similarly, in *Sawczyn*, 8 F. Supp.3d at 1112, this Court found on a motion to dismiss that the plaintiff had demonstrated the likelihood of returning to the challenged ATMs in the future, noting that he lived within three and eleven miles from the machines in question and regularly traveled within this zone.

In *Heartwood*, 885 F.3d at 543, the Eighth Circuit found that the district court properly determined that a question of disputed fact remained as to standing.[12] The

---

[12] While the Eighth Circuit agreed that standing remained a fact question, it ultimately affirmed summary judgment on the merits. *Heartwood*, 885 F.3d at 547–48.

individual plaintiff, Wong, lived in Minneapolis, and the place of public accommodation in question, an office building, was located approximately 12 miles away in St. Paul. *Disability Support Alliance v. Heartwood Enters., LLC*, No. 15-cv-529 (PAM/FLN) [Doc. No. 1-1] (Compl. ¶¶ 9, 11.) Wong submitted a declaration stating that he had tried to visit the office building in order to see a doctor located there, and he had a strong interest in returning, after the removal of the alleged barriers to access. *Heartwood*, 885 F.3d at 546. In his deposition, Wong also testified that he wanted to meet with this particular doctor because he advertised therapies that might be helpful to Wong's condition. *Id.* While the Eighth Circuit questioned Wong's credibility, it affirmed the district court's ruling that he had made a showing of actual injury, sufficient to survive summary judgment, in light of his stated intention to return to the business in the future. *Id.*

Unlike the plaintiff in *Heartwood*, Dalton had no specific plans to visit the Simonson Station on June 24, 2017, and had never visited it prior to that date. Rather, he may have visited Alexandria on June 24, 2017 merely to look for ADA violations at places of public accommodation. *See Dalton v. City of Alexandria*, No. 18-cv-352 (NEB/LIB), Compl. [Doc. No. 1]) (alleging June 24, 2017 visit). Also unlike Wong, who lived near the business in question, Dalton lives approximately 145 miles from the Simonson Station, and has no definite plans to return.

On summary judgment in *Smith v. Bradley Pizza, Inc.*, this Court found that the plaintiff lacked standing for several reasons, including that he failed to identify evidence showing that he faced an immediate and real threat of injury by the defendants. 2019 WL 2448575, at *7. The Court noted that the plaintiff, Smith, testified that he usually purchased

pizza from his local Burnsville, Minnesota Domino's Pizza, as opposed to the defendant's pizza business in Red Wing, Minnesota, and he had never been to Bradley Pizza, other than on the occasion that prompted his lawsuit. *Id.* Further, the Court found that Smith's general plans to visit Red Wing because of its status as a tourist destination were, at most, indicative of "some day" intentions, insufficient to establish a threat of future injury. *Id.*

Here, because the Court finds that it lacks subject matter jurisdiction on grounds of mootness, and assuming without deciding that the facts here are distinguishable from those in *Heartwood*, Plaintiff fails to sufficiently create a fact question sufficient to confer standing, Plaintiff's claim is dismissed without prejudice.[13] *See Dalton v. NPC Int'l, Inc.*,

---

[13] Because the Court finds that Plaintiff lacks subject matter jurisdiction, it does not reach the merits of Plaintiff's claim. However, it notes certain limitations in Plaintiff's summary judgment record. The Court has precluded the opinion of Plaintiff's proposed expert because Plaintiff failed to timely disclose him.

Also, to the extent that Plaintiff identifies proposed alternative remedies to the alleged violations, they are found in attorney argument in Plaintiff's summary judgment brief, (Pl.'s Mem. at 17) ("Defendants could have installed a level sidewalk at the entrance of adequate width for maneuvering clearance and a parallel curb ramp to the side of the entrance.") (citing a Mn/DOT Curb Ramp Guidelines), and in Plaintiff's counsel's declaration, submitted in support of Plaintiff's reply memorandum. (*See* Second Browne Decl. ¶¶ 1–2.) While the Eighth Circuit has not addressed parties' respective burdens concerning feasibility, in the related context of whether barrier removal is "readily achievable," the Eighth Circuit requires the plaintiff to initially present evidence of suggested modifications or expert opinion. *Wright*, 887 F.3d at 364. Assuming that an analogous standard applies here, Ms. Browne cites the Minnesota/DOT Curb Ramp Guidelines, (Pl.'s Mem. at 17; Browne Decl., Ex. I (Curb Ramp Guidelines)), with no evidence of applicability and feasibility other than attorney argument, (Pl.'s Mem. at 17) ("This remedy is also currently feasible, [as] it would mostly involve simply replacing concrete."), and Mr. Hansmeier, whose opinion the Court has excluded, does not address feasibility at all. Again, the Court does not rule on this basis, but merely notes the state of the record.

932 F.3d 693, 696 (8th Cir. 2019) (noting that, generally, a district may not dismiss a case with prejudice if it finds that subject matter jurisdiction is absent.); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) (noting that when a federal court finds that a plaintiff lacks Article III standing, "generally the appropriate remedy is to dismiss *without* prejudice.") (emphasis in original).

### B. Objections to Magistrate Judge's Order

As noted earlier, Plaintiff objects to the portion of the magistrate judge's September 11, 2018 Amended Order denying Plaintiff's Motion to Amend the Complaint to add certain allegations. (*See* Sep. 11, 2018 Am. Order at 11–18.) In reviewing an order from a Magistrate Judge, the Court must set aside portions of an order that are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc. 72(a); D. Minn. Local Rule 72.2.

Magistrate Judge Brisbois granted Plaintiff's motion in part and denied it in part. He permitted Plaintiff to add allegations that concerned Defendants' remediation efforts, finding no evidence of Plaintiff's bad faith or undue delay, nor prejudice to Defendants for such amendments. (Sept. 11, 2018 Am. Order at 7–8.) However, he denied amendments that concerned observations that Plaintiff appeared to have made on his return visit to the Simonson Station in February 2018. (*Id.* at 11–18.) As the magistrate judge noted, this return trip was apparently prompted by the Court's order that the parties "meet and confer at the site of the alleged violation" in order to confirm that Defendants had made changes to address Plaintiff's concerns. (Feb. 18, 2018 Order at 1.)

As to these allegations, Magistrate Judge Brisbois found that the amendments would be futile because Plaintiff lacked Article III standing. (Sept. 11, 2018 Am. Order at 13–18.)

He noted that while Plaintiff alleged that he exited his vehicle on the day in question, he did not assert that he sought "to patronize or utilize Simonson Station that day or even attempted to enter the building in any manner." (*Id.* at 16.)  Nor did he allege that the new observations made on February 21, 2018 deterred him from visiting the station then.  (*Id.* at 16–17) (citing *Hillesheim*, 900 F.3d at 1007).

Plaintiff objects to the magistrate judge's decision on several grounds.  First, Dalton argues that Magistrate Judge Brisbois applied the wrong standard of review.  (Pl.'s Obj. at 3.)  Dalton notes that although an amendment is futile if it cannot withstand a motion to dismiss under Rule 12(b)(6), he faults the magistrate judge for referencing Rule 12(b)(1).  (*Id.* at 3–4.)  Also, Dalton asserts that analysis of standing is "premature at the state of amending the complaint." (*Id.* at 4.)  He further faults the magistrate judge for raising the issue of standing *sua sponte*, without notifying the parties and giving them an opportunity to address it.  (*Id.*)  Apparently referring to the May 23, 2018 Order, Plaintiff states, "[i]ndeed, this Court has already rejected a jurisdictional attack on the claims made in the original complaint." (*Id.* at 5.)

The Court disagrees with Plaintiff's arguments. At all stages of a case, courts must address whether subject matter jurisdiction exists.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Dalton also argues that the magistrate judge's analysis is predicated on mistaken issues of fact and law, as the magistrate judge construed certain allegations to refer to observations made on the February 21, 2018 visit to the station.  (Pl.'s Obj. at 5.)  However, Dalton states

that the allegations merely confirmed his earlier, June 2017 observations of barriers that he personally encountered. (*Id.*) Further, he contends that the magistrate judge incorrectly applied the summary judgment evidentiary standard set forth in *Hillesheim* to the sufficiency of the pleadings on a motion for leave to amend. (*Id.* at 7–8.)

The Court acknowledges that the procedural posture here is a bit unusual, as Plaintiff's Objection was pending, even as the parties moved for summary judgment. But the allegations in question suffer from the same jurisdictional deficiencies identified earlier, most notably, they have been rendered moot, and Plaintiff has not sufficiently demonstrated an imminent threat of future harm. Accordingly, the Court overrules Plaintiff's objections as moot.

## III.  ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. No. 86] is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment [Doc. No. 91] is **DENIED**;

3. Plaintiff's Objection [Doc. No. 81] to the September 11, 2018 Amended Order of Magistrate Judge Leo I. Brisbois is **OVERRULED AS MOOT**; and

4. This matter is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 29, 2019                                      s/Susan Richard Nelson
                                                                          SUSAN RICHARD NELSON
                                                                          United States District Judge